Argued March 17, 1948.
In a summary proceeding appellants were adjudged in contempt by a court of common pleas for refusing to answer questions propounded by the County Election Board of Philadelphia.
The board is composed of the county commissioners, and is charged with certain duties by the Pennsylvania Election Code of June 3, 1937, P.L. 1333, as amended, 25 P. S. § 2600 et seq. With it are filed nomination petitions and papers of candidates for designated county and municipal offices, and it is authorized to determine their sufficiency and to reject them if certain defects appear upon *Page 501 
them. Id. § 302(j), 25 P. S. § 2642; § 976, 25 P. S. § 2936. It has power: "To investigate election frauds, irregularities and violations of this act, and to report all suspicious circumstances to the district attorney": Id. § 302(i), 25 P. S. § 2642. As will more fully appear, it may issue subpœnas and compel production of books, papers, records and other evidence. Id. § 304(a), 25 P. S. § 2644.
A nomination paper on behalf of the appellant, Rader, as a candidate for city council was presented to the board. An objection was filed to it, which, as we read the notes of testimony taken by the board, raised questions not cognizable by the board under § 976, supra. Hence the board determined to utilize its investigatory powers provided by § 302(i), and designated a date "for an examination and investigation into the signing and preparation of" the paper. Meanwhile a petition was filed in the common pleas court under § 977, 25 P. S. § 2937, praying that the paper be set aside. Appellants appeared before the board in response to its subpoena, and, apparently in good faith, alleged that the effect of the petition to the common pleas was to deprive the board of further jurisdiction, or at least to suspend it, and, under the advice of counsel, refused to answer some of the questions propounded to them.
Whereupon the board petitioned the court for an attachment. Appellants' answers set forth the above facts, challenged the jurisdiction of the board, disclaimed an intention to commit contempt, and prayed for leave to purge themselves by answering the questions if the court held otherwise. The record of the hearing in the court below consists of one printed page in the record. No testimony was adduced against the appellants, but nevertheless the court sentenced "Rader, $100 or thirty days in jail, Carner, $50 or thirty days in jail, Goldenberg, $50 or thirty days in jail, Le Compte, $100 or thirty days in jail."
Apart from other errors to which no reference need be made, it is apparent that the court adjudged appellants *Page 502 
in contempt for acts committed in the presence of the board, an independent governmental agency, not an arm or official body of the court. Appellants were not officers of the court; they did not as officers, parties, jurors or witnesses disobey or neglect the lawful process of the court; and they did not misbehave inthe presence of the court. Hence, under the Act of June 16, 1836, P.L. 784, 17 Pa.C.S.A. § 2041, the common pleas court was without power to punish them, summarily or otherwise. Cf. Marks' Appeal,144 Pa. Super. 556, 20 A.2d 242; Snyder's Case, 301 Pa. 276,152 A. 33. And see the luminous and cogent concurring opinion of Mr. Justice MAXEY, now the Chief Justice, in Penn AnthraciteMining Co. v. Anthracite Miners of Pa., 318 Pa. 401, 413,178 A. 291. Nor were they punishable under the Act of June 23, 1931, P.L. 925, 17 Pa.C.S.A. § 2047, for that Act is applicable only "for violation of a restraining order or injunction issued by a court."
The board, which is appellee here, would vindicate the sentences under review by reference to a provision of § 304(a), supra: "All subpœnas issued by the county board shall be in substantially the same form and shall have the same force and effect as subpœnas issued by the court of common pleas of such county, and, upon application, the board shall be entitled to the benefit of the process of such court if necessary to enforce any subpœna issued by them." This means only that an attachment of the common pleas is available to the board to compel theappearance of a witness. To allow the provision to mean more would be an enlargement of the power of the court, already restricted by the express terms of the Act of 1836, supra, and would authorize it, by a vague and at most an equivocal expression, to punish summarily contempts committed before an independent governmental agency. A contempt is an affront to legal authority, an offense punishable by fine or imprisonment or both, and while the common pleas courts possess power to punish contempts, as restricted and *Page 503 
defined by the Act of 1836, supra, that power does not, in the absence of specific legislation, extend to extra-curiam contumacy, committed before a board or an officer whose authority is not derived from a court.
Whenever the legislature has made a contempt committed before a board or an official punishable by a summary proceeding in a court, it has defined the offense and the procedure by a clear, explicit, apt, and positive enactment. Invariably, it has denounced the contumacious conduct before a board or officer as equivalent to a contempt of court, and authorized a court to punish it as such. For example, the Administrative Code of April 9, 1929, P.L. 177, § 520, 71 P. S. § 200 provides: "Any witness, who refuses to obey a subpœna issued hereunder, or who refuses to be sworn or affirmed, or to testify, or who is guilty of any contempt after summons to appear, may be punished for contempt of court, and, for this purpose, an application may be made to any court of common pleas within whose territorial jurisdiction the offense was committed, for which purpose, such court is hereby given jurisdiction." This provision with verbal, and sometimes substantial, variations appears in many acts, some of which are collated in an appended note. In the absence of a similar provision in the organic legislation under which a board or officer is proceeding there is no authority in any court to punish summarily for a contempt committed before them. It does not follow that because a board is without authority to punish contempts that courts possess summary power. To punish summarily for a contempt not within the Act of 1836, supra, a judge must find his authority in a statute, and he who acts without law acts against the law.
This statute provides punishment for recalcitrant witnesses. The Pennsylvania Election Code (§ 1801, 25 P. S. § 3501) provides: "Any person who wilfully disobeys any lawful instruction or order of any county board of elections, or who refuses to obey their subpœna duly issued and served under the provisions of this act, shall be guilty *Page 504 
of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding five hundred ($500.) dollars, or to undergo an imprisonment not exceeding one (1) year, or both, in the discretion of the court." And should it be considered that the section is not applicable to a witness who appears but refuses to answer relevant questions, there is always available a prosecution by indictment, unless under the Act of March 21, 1806, P.L. 558, 4 Sm. L. 326, § 13, 46 P. S. § 156, the quoted section is the exclusive remedy. The board is a quasi-judicial body, Boord v. Maurer, 343 Pa. 309, 22 A.2d 902, and GIBSON said in Brooker v. Com., 12 S R 175, 176: "Every obstruction of an officer, in the execution of his office, is a public injury, and unless where the legislature has directed otherwise, is indictable." Cf. Albright v. Lapp, 26 Pa. 99;Passmore Williamson's Case, 26 Pa. 9. At all events, the board is not destitute of means of sustaining its authority.
Appellee relies solely upon Kelly's Contested Election, 200 Pa. 430,50 A. 248 (reported sub. nom. Com. v. Gibbons, 9 Pa. Super. 527) but that case, so far from supporting its position, actually fortifies our view. Gibbons refused to answer questions propounded by examiners appointed by a court of competent jurisdiction, and the examiners certified the proceedings to the court which ruled that he should answer the questions. He peremptorily refused the second time, and when attached for contempt appeared in open court "and read his written answers, refusing to respond to the questions." Both this and the Supreme Court declined to decide whether Gibbons' contumacy before the examiners constituted contempt, although they were officers of the court and acting under its authority; instead, they based their adjudication upon his actions in open court and found the requisite power to punish in the Act of 1836, supra. Had appellants refused to answer in open court after they had been summoned by attachment, the Kelly case might have been helpful to appellee. *Page 505 
This appeal from a common pleas court did not involve "either money, chattels, real or personal, or the possession of or title to real property", and hence, regardless of the amount involved, was not within our jurisdiction. Act of June 24, 1895, P.L. 212, § 7(c), as amended, 17 Pa.C.S.A. § 184. This defect was called to the attention of counsel at the bar of this Court, and appellee expressly waived objection to our jurisdiction. Accordingly, we have decided the appeal. Act of May 5, 1899, P.L. 248, § 11, 17 Pa.C.S.A. § 203.
Orders and sentences reversed at appellee's costs.
NOTE: Some of the Acts of Assembly, referred to in the above opinion, which punish refusal to testify before officers and boards as contempts of court are:
June 15, 1911, P.L. 974, § 4, 72 P. S. § 4363 (Auditor General): May 23, 1907, P.L. 206, § 8, 53 P. S. § 9370 (Civil Service Commission, cities of second class); May 4, 1927, P.L. 753, § 4, 46 P. S. § 424 (Commission investigating pillars in coal mines); Feb. 26, 1831, P.L. 92, § 4, 42 Pa.C.S.A. § 518 (Commissioner to take depositions); May 28, 1937, P.L. 1053, § 1307, 66 P. S. § 1497; § 1309, 66 P. S. § 1499 (Public Utility Commission); April 8, 1937, P.L. 262, § 12, 7 P. S. § 761-12 (Secretary of Banking in re Consumer Discount Companies); June 25, 1919, P.L. 581, § 8, 53 P. S. § 3258; May 17, 1883, P.L. 32, § 2, 53 P. S. § 3454 (Council of first class cities); March 19, 1903, P.L. 31, § 1, 53 P. S. § 251 (Councils of cities of second and third class); June 25, 1937, P.L. 2063, § 4, 27 P. S. § 437 (Department of Revenue in re escheats); June 8, 1911, P.L. 705, § 8, 53 P. S. § 3598; May 13, 1915, P.L. 297, § 4, 53 P. S. § 9725; April 27, 1927, P.L. 450, § 5,35 P. S. § 1185 (Fire marshals); June 2, 1913, P.L. 396, § 13,71 P. S. § 1442 (Department of Labor and Industry Industrial Board); June 1, 1937, P.L. 1168, § 10(c), as amended, 43 P. S. § 211.10 (State Labor Relations Board); April 28, 1937, P.L. 417, § 306, 31 P. S. § 700j-306
(Milk Control Commission); May 18, 1911, P.L. 309, § 2611, 24 P. S. § 2211 (School auditors); June 24, 1939, P.L. 748, § 19, as amended, 70 P. S. § 49 (Securities Commission); June 5, 1937, P.L. 1705, § 8, 35 P. S. § 1508 (State Board of Housing); May 18, 1937, P.L. 658, § 3, 43 P. S. § 827 (Unemployment Compensation officers); July 21, 1919, P.L. 1077, § 22, 77 P. S. § 134 (Workmens Compensation officers).
The list is not a complete or exhaustive collation of the legislation, and is intended only to provide illustrations of the varying forms by which the power to punish for contempt before boards and officers has been bestowed upon the courts. *Page 506