## Commonwealth ex rel. Chidsey, Appellant, *v.* Mallen et al.

Argued November 9, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Ralph B. Umsted*, Deputy Attorney General, with him *T. McKeen Chidsey*, Attorney General, for appellant.

*Thomas D. McBride*, with him *John Patrick Walsh* and *David Berger*, for appellees.

OPINION BY MR. JUSTICE LINN, January 3, 1949:

This appeal brings up for review an ancillary proceeding instituted by the attorney general for judicial aid in the course of an investigation conducted by one of his deputies, and several employes of the state's bank-

ing department. The court denied the attorney general's application, who then took this appeal. As authority for the proceeding in the court below, the attorney general relied on sections 520 and 904 of The Administrative Code (Act of April 9, 1929, P. L. 177, as amended), 71 PS 200 and 71 PS 294. Section 520 provides: "Every administrative department, every independent administrative board and commission, every departmental administrative board and commission, every advisory board and commission, and the several workmen's compensation referees, shall have the power to issue subpœnas, requiring the attendance of witnesses and the production of books and papers pertinent to any hearing before such department, board, commission, or officer, and to examine such witnesses, books, and papers.

"Any witness, who refuses to obey a subpœna issued hereunder, or who refuses to be sworn or affirmed, or to testify, or who is guilty of any contempt after summons to appear, may be punished for contempt of court, and, for this purpose, an application may be made to any court of common pleas within whose territorial jurisdiction the offense was committed, for which purpose, such court is hereby given jurisdiction."

Section 904 provides: "The Department of Justice shall have the power, and its duty shall be, with the approval of the Governor: (a) To investigate any violations, or alleged violations, of the laws of the Commonwealth which may come to its notice; (b) To take such steps, and adopt such means, as may be reasonably necessary to enforce the laws of the Commonwealth."

The respondents are George J. Mallen, Vincent P. Duffy, and James M. Hogan; a rule was granted on them "to show cause why they and each of them should not be punished for contempt of court." The only assignment of error is to the order [1] discharging this rule.

---

[1] "The learned Court erred in dismissing the Commonwealth's petition and in discharging its rule to show cause why George J. Mallen, Vincent P. Duffy and James M. Hogan should not be pun-

The petition on which the rule was granted alleged that "as a result of certain information which came to the notice of the Department of Justice of the Commonwealth of Pennsylvania concerning the sale and liquidation of certain assets of defunct building and loan associations by the following corporations [naming ten companies] and by virtue of the power and duty of the Department of Justice conferred under Section 904 of the Administrative Code of 1929, the Act of April 9, 1929, P. L. 177, as amended, and with the approval of the Governor it was determined to investigate violations or alleged violations of the laws of the Commonwealth arising out of said transactions."

The petition also alleged that pursuant to "Section 520 of the Administrative Code . . . a Subpœna Duces Tecum issued to the above named, [Mallen, Duffy and Hogan] directing them and each of them to appear before representatives[2] of the Attorney General [at a certain time and place]. and to produce certain books, papers and records in accordance with the tenor thereof." The subpœna was served but the respondents did not appear in person nor produce any records. They appeared by counsel and placed on record a statement signed by them giving their reasons for not attending and for not producing the desired records. They filed an answer to the rule to show cause in which they denied that section 904 authorized the investigation and denied

ished for contempt of court, having failed to appear in person in accordance with subpœna issued March 22, 1948, by the Department of Justice at the County of Philadelphia.

"The rule is as follows:

"The order of the Court is as follows: 'The Petition is therefore dismissed and the Rule to punish the respondents discharged as of its original date.' "

[2] It is conceded that the persons before whom respondents were asked to appear were "Ralph B. Umsted, Deputy Attorney General; Horace H. Eshbach, an employe of the Department of Banking; Edwin C. Emhardt, an attorney in the employ of the Department of Banking, and Walter L. Breneman, an 'investigator'."

that section 520 authorized the subpœna; they denied that section 520 authorized the petition for the rule, and alleged that section 520 was unconstitutional "(a) in that, without any notice whatever in its title that it would in any way revolutionize the judicial system of Pennsylvania it attempts to confer jurisdiction of a criminal case on the common pleas court, in violation of Section 1, Section 4, Section 8 and Section 9 of Article 5 of the Constitution of Pennsylvania;

"(b) in that it attempts to confer jurisdiction upon a common pleas court even though the subject matter of the Administrative Code is concerned only with administrative and executive departments of the Commonwealth and the title thereto gives no notice that it applies in any way to the judicial power or that the body of the Act would attempt to modify in any way the jurisdiction of any court. Hence, it violates Article III, Section 3, of the Constitution of Pennsylvania."

The answer also avers, "7. The manner in which the 'investigation' is being conducted constitutes oppression in that, without any charge whatever having been filed against Respondents, or any allegation made that they have violated the law, said investigators propose to question them in public, with newspaper reporters present to report publicly the questions and answers and photographers in the room ready to snap pictures at will. Respondents further aver on information and belief that on the return day of the subpœna, to wit, March 29, 1948, at 11 o'clock a.m., the said investigators were seated in a room by a court stenographer and flanked by three reporters from the great daily papers and a newspaper photographer, the said reporters and photographer being directly in the room where the inquisition was to take place.

"8. Respondents have heretofore been subject to great humiliation and notoriety by the deliberate act of

the investigators in causing to be made public matters that occurred in said investigation.

"9. Respondents aver that Section 520 of the Administrative Code of 1929 as applied by the petitioner and the said inquisition violates the fundamental principle of separation of governmental powers provided for by the Constitution of Pennsylvania, in that it constitutes an attempt to exercise the purely judicial power of subpœna by a non-judicial officer, person or persons or body in a mere 'investigation.' "

The case was heard on petition and answer. The facts stated in the answer must therefore be taken as admitted for the purposes of the case. *Com. v. Sheasley*, 102 Pa. Superior Ct. 384, 391, 157 A. 27, 29 (1931). Pursuant to an opinion filed by McDEVITT, P. J., the rule was discharged on April 23, 1948, for the reason, inter alia, that respondents were not in contempt of the court of common pleas which would not punish respondents for contempt of another body. Compare *Phila. Co. Election Board v. Rader et al.*, 162 Pa. Superior Ct. 499, 58 A. 2d 187 (1948). Thereafter, on April 28, 1948, the attorney general filed a petition entitled, "Petition for Reargument," alleging "that while the phraseology of the Rule to Show Cause (which had just been discharged) followed the wording of Section 520 of The Administrative Code . . . it was not sufficiently explained in arguments of the Commonwealth, so the Court could have a 'clear picture of the precise relief sought." In this petition for reargument, the attorney general asked for "an Order of [the] Court directing the respondents to comply with the subpœna of the Department of Justice and in the event of their failure to comply, and after due process of law" to order punishment for contempt. Such relief had not been asked in the petition for the rule to show cause. The respondents did not answer this petition.

The next thing we have in the record is an additional opinion by McDEVITT, P. J., based on the reargument

petition, dealing with the record and adhering to the former conclusion of the court dismissing the petition and discharging the rule.

The difference in what the attorney general asked for in his petition for the rule to show cause why respondents "should not be punished for contempt of court" and in what he asked for in his petition for reargument of the rule is significant in the endeavor to ascertain the attorney general's construction of section 520. Quite obviously, between the time of the drafting of the petition for the rule, and the drafting of the petition for reargument after his rule was discharged, the deputy attorney general in charge of the proceeding concluded that his earlier construction of section 520 to the effect that he need only apply to the common pleas for punishment was erroneous and that to give judicial sanction to the proposed step, due process required something in the nature of the relief prayed for in the petition for reargument.

In disposing of the petition for reargument the judge remarked that the court was again confronted with the fact that no testimony had been taken. "As no testimony was taken the meager knowledge the Court possesses of the nature of the investigation has been gathered from statements in the plaintiff's brief setting forth the purpose of having the respondents appear before the Department of Justice.

"The Court determined after the first argument that there could be no punishment under such a Rule because there could be no contempt of court, unless the contempt had been to judicial order of the Court.

"See Cudahy Packing Co. v. Holland, 315 U. S. 357." [3] As we said before, the order made by the court on the petition for reargument is not assigned for error. The appeal is singular in another respect. The attorney gen-

---

[3] On this subject see opinion of Judge RENO in *Philadelphia Co. Election Board v. Rader*, 162 Pa. Superior Ct. 499, 502, 58 A. 2d 187, 188-9 (1948).

eral, in another proceeding, has obtained the books, papers and records which were sought in this. On page 9 of the attorney general's brief it is said, "The Commonwealth does not now press for the production of books, papers and records nor does it seek punishment for refusal to obey the duces tecum provisions of the subpœna. The subpœna is divided into two parts, the duces tecum and ad testificandum. That they are severally enforceable is made adequately clear. . . . This argument will be confined to the narrow question of the compulsory attendance of witnesses before a Department of Justice hearing and remedial measures applicable to recalcitrant witnesses."

It is now apparent that the subject for consideration on the record before us is the compulsion of testimony.[4] In *Baird v. Cochran and Dowling*, 4 S. & R. 396, 399-400 (1818), Chief Justice TILGHMAN said, "From the nature of society, it would seem, that every man is bound to

---

[4] Testimony was compelled in England and in the Colonies before our constitutions were adopted: Act of 5 Eliz. c. 9, sec. 12 (1562) ; *Havithbury v. Harvey*, Cro. Eliz. 131, 78 Eng. Rep. 387; 1 Leon. 122, 74 Eng. Rep. 114; *Goodwin (or Goodman) v. West*, Cro. Car. 522, 540, 79 Eng. Rep. 1052, 1066. See *Blair v. U. S.*, 250 U. S. 273, 279, 39 S. Ct. 468, 63 L. Ed. 979 (1918) ; *Wilson v. U. S.*, 221 U. S. 361, 373, 31 S. Ct. 538, 55 L. Ed. 771 (1910) ; 8 *Wigmore, Evidence*, 3d ed., section 2190 et seq.; *Williams v. State*, 125 Ark. 287, 188 S. W. 826 (1916) ; *Ex Parte Cohen*, 104 Cal. 524, 38 Pac. 364 (1894) ; *Lathrop v. Clapp*, 40 N. Y. 328 (1869) ; *In Re Davies*, 168 N. Y. 89, 61 N. E. 118 (1901) ; *Ex Parte Barnes*, 73 Tex. Cr. 583, 166 S. W. 728 (1914). Earlier, in the 15th century, witnesses not only could not be compelled to come to court and testify but were barred by the law which regarded them as officious meddlers and provided a civil action of maintenance against them. *Holdsworth, History of English Law*, 3d ed., vol. I, p. 335, vol. III, p. 398; *Thayer on Evidence*, 124-9; 8 *Wigmore, Evidence*, 3d ed., section 2190. The practice of compulsory attendance was evolved in chancery and the common law courts to meliorate the harsh doctrine of maintenance; the theory being that an action would not lie where attendance was compelled by law. The concept of duty to testify appeared later. See *Dobson v. Crew*, Cro. Eliz. 705, 78 Eng. Rep. 940 (1599).

declare the truth, when called upon in a court of justice, except the disclosure will tend to convict him of some crime, or render him subject to some penalty. . . . The general welfare will be best promoted, by considering the disclosure of truth as a debt which every man owes to his neighbor, which he is bound to pay when called on, and which in his turn he is entitled to receive.

The requisites of due process are as necessary in administrative as in judicial proceedings. *Shields v. Utah Idaho Central Railroad Co.*, 305 U. S. 177, 59 S. Ct. 160, 83 L. Ed. 111 (1938); *Com. v. Cronin*, 336 Pa. 469, 9 A. 2d 408 (1939); *Phila. v. Scott*, 81 Pa. 80 (1876); *Cf. Wong Wing v. U. S.*, 163 U. S. 228, 16 S. Ct. 977, 41 L. Ed. 140 (1896); *Federal Power Com. v. Metropolitan Edison Co.*, 304 U. S. 375, 58 S. Ct. 963, 82 L. Ed. 1408 (1938). Wigmore says of the power of administrative officers to compel testimony: "The procedure of such officers . . . may well enough take the form of a subpœna. But the ultimate act of enforcing answers is here . . . a judicial act, and both in logic and in policy it should require resort to a Superior Court for a ruling." 8 Wigmore, 3 ed., section 2195, 4, page 81.

Two questions present themselves: Was there authority to issue the subpœna in this investigation? If there was, may the respondents be punished by the procedure adopted and on the record presented?

It may be conceded for present purposes that authority to issue the subpœna described in section 520 was given but, as the next sentence shows, the subpœna was a mere notice embodying the elements stated and not a subpœna in the sense in which that term is generally employed in judicial procedure. When we come to this sentence and read that one "guilty of any contempt after summons to appear may be punished for contempt of court . . ." in an ancillary proceeding we come to another technical term of established meaning used in section 520 in a sense not attributed to it prior to this legislation. "Contempt of court (contemptus curiæ) has

been a recognized phrase in English law from the twelfth century to the present time." [5] But contempt of the investigators, as charged here, cannot by legislative fiat be transformed into a judicial judgment; due process must be observed.

We have already stated, in describing the record before us, what the attorney general asked for in his petition for the rule calling on respondents to "show cause why they should not be punished for contempt of court, having failed to appear in person and to produce books . . . in accordance with subpœna issued March 22, 1948, by the Department of Justice at the County of Philadelphia." He did not present to the court a prima facie case for the ancillary order prayed for. The court below was not only justified in refusing but was required to refuse its aid. If a proper case had been presented and after proper hearing the respondents had been ordered to comply with the subpœna of the investigators and had thereafter defaulted, different questions would have been presented; without more facts than are disclosed in the petition and answer, the subject cannot be adequately discussed.

So lacking in due process was the procedure adopted by the attorney general that we shall not stop to consider whether the deputy attorney general was conducting an investigation or a hearing and whether there is any difference between them; nor shall we consider whether the deputy has shown that he had authority to sign the subpœna (compare *Cudahy Packing Co. v. Holland*, 315 U. S. 357, 62 S. Ct. 651, 86 L. Ed. 895 (1942) ). For the same reasons, it is also unnecessary, without more than appears on this record, to consider constitutional objections urged by respondents.

The order appealed from is affirmed.

---

[5] *The History of Contempt of Court*, by Sir John C. Fox (Clarenden Press 1927), p. 1.