## Hemphill *v.* Lenz, Appellant.

Argued October 2, 1963. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

10

 reargument refused December 18, 1963.

*Howard Gittis*, with him *Herbert W. Yanowitz*, *Thomas D. McBride*, and *Wolf, Block, Schorr and Solis-Cohen*, for appellant.

*Karl I. Schofield*, Assistant City Solicitor, with him *James L. Stern*, Second Deputy City Solicitor, *Matthew W. Bullock, Jr.*, Deputy City Solicitor, and *Edward G. Bauer, Jr.*, City Solicitor, for appellee.

OPINION BY MR. JUSTICE COHEN, November 12, 1963:

This is an appeal from the order of the court below compelling appellant Lenz to appear before the controller of the City of Philadelphia for the purpose of answering questions and producing records in compliance with a subpoena issued under §8-409 of the Philadelphia Home Rule Charter.[1]

---

[1] "Power to Obtain Attendance of Witnesses and Production of Documents. Every officer, department, board or commission authorized to hold hearings or conduct investigations shall have power to compel the attendance of witnesses and the production of documents and other evidence and for that purpose it may issue subpoenas requiring the attendance of persons and the production of documents and cause them to be served in any part of the City. If any witness shall refuse to testify as to any fact within his knowledge or to produce any documents within his possession or under his control, the facts relating to such refusal shall forthwith be reported to any one of the Courts of Common Pleas of Philadelphia County and all questions arising upon such refusal and also upon any new evidence not included in the report, which new evi-

Marbelite Company, Inc. (Marbelite), a New York corporation, entered into contracts with the City of Philadelphia for the delivery of traffic signal equipment. Appellee, controller of the City of Philadelphia, acting pursuant to §8-409 of the Philadelphia Home Rule Charter, personally served appellant Lenz, treasurer of Marbelite, with a subpoena ordering him to appear for the purpose of giving testimony and producing corporate records relating to Marbelite's performance of these contracts. Appellant refused to obey the subpoena. Thereupon, appellee filed a petition in the court of common pleas and obtained a rule to show cause why appellant should not appear and produce certain records. Appellant was unavailable for service in Pennsylvania. A copy of the "petition and rule" was left with a receptionist at Marbelite's office in Brooklyn and registered letters were mailed to that office by appellee's New York agent and the city solicitor's office of Philadelphia. Counsel for appellant appeared and filed preliminary objections to the jurisdiction of the court, alleging that appellant had not been served in accordance with law. The court below overruled these objections and this appeal followed.

The sole question which this appeal presents for our determination is whether the court below had jurisdiction over the person of appellant for the purpose of enforcing the subpoena issued by the controller.[2]

---

dence may be offered either in behalf of or against such witness, shall as promptly as possible be heard by such court. If the court shall determine that the testimony or document required of such witness is legally competent and ought to be given or produced by him, the court may make an order commanding such witness to testify or to produce documents or do both and if the witness shall thereafter refuse so to testify or so to produce documents in disobedience of such order of the court, the court may deal with the witness as in other cases."

[2] Since appellant does not question the validity of the subpoena itself, we need not decide whether there was a hearing before the

12

Appellee contends that the proceeding below was ancillary to the issuance of the subpoena by the controller and that jurisdiction over the appellant was therefore acquired by such issuance. Appellant argues that the court below did not acquire jurisdiction over him because the proceedings were of the nature of an independent action which must be commenced by service of process. The resolution of these arguments lies in the nature of the subpoena and the enforcement proceedings provided by §8-409.

Following refusal to comply with a subpoena issued under §8-409, that section provides that the court *may* make an order commanding a witness to testify or produce documents if it determines *"that the testimony or document required of such witness is legally competent and ought to be given or produced by him."* (Emphasis supplied). The administrative agencies covered by this provision do not have the power to require courts to enforce subpoenas issued under its authorization. The action a court is to take is a matter for its discretion and subject to its customary powers. Thus, the power of the courts in enforcement proceedings closely resembles the power they possess in ordinary actions in law and equity. See Annotation to §8-409.[3]

In addition to being an extremely useful tool in the prosecution of governmental business, the subpoena power is one which is fraught with possibilities of abuse. Hence, we view its enforcement as well as its use with the utmost caution. Accordingly, in the absence of any direction to the contrary, we hold that court enforcement of an administrative subpoena un-

---

controller in pursuance to which a subpoena might issue within the contemplation of §8-409. See in this connection *Commonwealth ex rel. Margiotti v. Orsini*, 368 Pa. 259, 81 A. 2d 891 (1951).

[3] See also *Cathcart v. Crumlish*, 410 Pa. 253, 257, 189 A. 2d 243, 245 (1963).

der §8-409 is an independent judicial proceeding requiring service of process.

We recognize that the procedures for issuance and enforcement of what are sometimes loosely termed "subpoenas" are various. It has been held that where the agency issuing the subpoena has the power to compel court enforcement on a bare showing that there is a proceeding before the agency over which it has jurisdiction and the evidence sought relates to the matter under investigation, the court proceeding is ancillary to the issuance of the subpoena and the court need not acquire jurisdiction over the subpoenaed party by service of process. *Cudahy Packing Company v. NLRB*, 117 F. 2d 692, 694 (1941); *Goodyear Tire and Rubber Co. v. NLRB*, 122 F. 2d 450, 451 (1941).[4] However, this procedure differs from and has no application to the requirements of §8-409.[5]

The lower court recognized the necessity of obtaining personal jurisdiction over a person by complying with some form of service of process. However, it apparently believed that the successful attempts of the appellant to evade service somehow rectified the appellee's failure to so comply. The alleged evasive conduct of appellant could not under any circumstances transform what was otherwise improper service into an effective service of process. Since appellee has not followed any established procedure for obtaining service of process, we need not now determine what type

---

[4] See National Labor Relations Act, 29 USC §161(2) (1956); Federal Trade Commission Act, 15 USC §49 (1956). Note that the NLRB as well as the FTC are quasi-judicial bodies with powers approximating those of the courts.

[5] Cf. The Administrative Code, Act of April 9, 1929, P. L. 177, as amended, 71 P.S. §200 (1962); *Com. ex rel. Chidsey v. Mallen,* 360 Pa. 606, 614, 63 A. 2d 49, 53 (1949); *County Election Board of Philadelphia v. Rader,* 162 Pa. Superior Ct. 499, 503, 58 A. 2d 187, 189 (1948).

of service is necessary to obtain jurisdiction over a defendant located outside of Pennsylvania in this type of proceeding.[6]

There having been nothing here to give the lower court jurisdiction over appellant, we reverse the order below.

Order reversed with costs to appellee.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am unable to accept as sound in principle or as necessary in practice the conclusion of the majority that, for the court below to obtain jurisdiction over appellant, two personal services of process were required.

To hold as the majority does, that enforcement of the subpoena "is an independent judicial proceeding requiring service of process," creates, in my view, an unrealistic and arbitrary barrier between the initial procedural step of issuance of the subpoena and its enforcement for disobedience. Enforcement (when necessary) is merely another aspect (following issuance) of the subpoena to achieve the single objective—the appearance of the subpoenaed witness.

The Charter expressly confers jurisdiction on the courts of common pleas of Philadelphia County to enforce subpoenas issued by officers of the city empowered to hold hearings. It seems obvious that the courts acquired jurisdiction for enforcement purposes from the moment the procedural act of serving the subpoena was completed and that no further personal service of process was required. Thereafter, whether the court was called upon to exercise its enforcement jurisdiction depended upon the turn of events.

---

[6] Nor do we decide that filing a petition and rule is a proper method for initiating this type of proceeding. See *Commonwealth v. Dauphin County*, 354 Pa. 556, 47 A. 2d 807 (1946).

It seems equally clear that it was not intended by §8-409 of the Charter to require the service of process twice in order to confer jurisdiction upon the court. The Charter directs that designated city officials "shall have power to compel *the attendance of witnesses*" (emphasis supplied) by subpoena but reserves to the courts the determination whether the subpoena should be enforced.

Thus, the service of a subpoena under the Charter is a procedural device which initiates the proceeding. If the witness disobeys the subpoena, he does so subject to the express grant of authority in the court to issue proper enforcement orders. In this respect, the process is not unlike the procedure which now obtains in our courts with respect to subpoenas. Any party may secure process from the appropriate prothonotary or clerk and may have it served by anyone upon the witness. Thereafter, even though the court has had no advance notice of the issuance of the process or of its service, the court may proceed to make appropriate orders when the subpoena is disobeyed.

Had the Legislature intended that the courts should exercise complete supervision over the *issuance* of a subpoena in order to obviate what the majority fears, that "the subpoena power is one which is fraught with possibilities of abuse," it would have provided that city officers must first make application to the court for the issuance of its process. This would have given the court control over *issuance* as well as enforcement. This, however, the Legislature did not do. Instead it gave to city officers the power to issue process without involving the court unless controversy arises. Obviously, the Legislature did not wish to burden the court with such procedural matters when court action might not be required, and, therefore, merely provided that the court not be obliged to act unless enforcement problems arise.

While it is true that some discretion is vested in the officers with respect to whether a subpoena should be issued, this is precisely the discretion reposed in a litigant or counsel who desires to compel a witness to testify and issues a subpoena for the purpose. In the ordinary court situation, process is issued in the name of the court, but application to the court for leave to issue is not required; the process issues without the court's permission or knowledge.

The real problem is whether, when the Legislature gives enforcement powers to a court, that tribunal must issue its own process and have it served, notwithstanding that the power to initially issue and serve is conferred upon an agency of government not connected with the court itself. There is no impediment to empowering such officer to issue and serve the process and thus bring the witness within the jurisdiction of the court for enforcement purposes, as long as the Legislature does not confer judicial enforcement powers upon the officer. In this instance, it is a procedural device only, establishing the circumstances under which, if ever, the witness must appear in court to answer for his disobedience. No logical or legal reason appears why the procedural step of issuance by the court could not be eliminated, thus saving the time and efforts of a busy court.

Certainly, in establishing adjective matters, the Legislature could logically simplify practice so long as substantive law is not offended. Much of the theory behind our rules of civil procedure is to refrain from burdening the court whenever possible, bringing discovery and other matters to the court's attention only when enforcement or protective orders are involved. I see no difference between the procedure in these situations and that established under the Charter and followed here.

I would, therefore, affirm the order of the court below compelling appellant to appear in response to the subpoena properly issued and served.