# In Re: Crime Commission's Subpoena Enforcement Petition.

Argued June 16, 1971, before President Judge BOW-MAN and Judges WILKINSON, JR., and ROGERS, sitting as a panel of three.

*Alan L. Adlestein,* Assistant Attorney General, *Russell M. Coombs,* Deputy Attorney General, *Henry R. Wray,* Assistant Attorney General and *J. Shane Creamer,* Attorney General, for petitioner.

*Ronald N. Rutenberg,* with him *Rutenberg, Rutenberg, Rutenberg & Rutenberg,* for respondent, Rocco Molinari.

*Alan J. Davis,* with him *Wolf, Block, Schorr and Solis-Cohen,* for respondent, Michael Grasso, Jr.

*Lester J. Schaffer,* with him *Zink, Shinehouse & Holmes* for respondent, Ralph Puppo.

PER CURIAM OPINION, August 10, 1971:

The Pennsylvania Crime Commission, presently engaged in an investigation of organized crime and other criminal activity in the Philadelphia area, particularly involving the infiltration of business enterprises, issued and effected personal service of subpoenas against the four respondents in these consolidated proceedings.[1] All respondents appeared at the appointed time and place in Philadelphia but respondents Grasso, Molinari and

---

[1] Respondents Grasso, Molinari and DePhillipo were served with both subpoenas ad testificandum and duces tecum relating to various business entities. Respondent Puppo was served with only an ad testificandum subpoena.

Puppo refused to be sworn or to answer any questions. DePhillipo was sworn and did testify, resting on his privilege against self-incrimination in refusing to answer any question except as to his name and address. He also refused to produce the records of the business enterprises which were the subject of a subpoena *duces tecum* on the grounds that their production might tend to incriminate him.

This conduct upon the part of the several respondents prompted the Commission to seek judicial aid in enforcement of the subpoenas. Accordingly, the Commission filed in this Court separate petitions against each of the respondents for the issuance of rules to show cause why the respondents after hearing should not be ordered to testify and/or produce records as identified in the subpoena *duces tecum* previously served. A rule was issued returnable on June 16, 1971, at which time it was ordered that hearing on the petition and any answer thereto would also be held. Certified copies of the petition and order of court were *personally served* upon each of the respondents.

Prior to the return date of the rule and the hearing date, respondents Grasso, Molinari and Puppo filed preliminary objections questioning (1) the jurisdiction (venue) of the Commonwealth Court over the subject matter and (2) its jurisdiction over the person of each respondent for want of service of "original process."[2]

After argument on the preliminary objections heard by a three judge panel, orders were entered dismissing the objections, the Court being of the opinion that it

---

[2] Respondent DePhillipo, having answered the rule to show cause, appeared with counsel for hearing and was prepared to raise numerous substantial legal issues concerning the constitutionality of the statutory law under which and the procedures by which the Commission operates. The other respondents indicated they intended to raise similar questions. These questions were not reached and remain for future determination.

enjoyed concurrent jurisdiction over the subject matter and jurisdiction over the person of each respondent. Appeals from these orders were promptly taken to the Supreme Court of Pennsylvania. As mandated by its Rule 63, there follows a statement of the reasons for the entry of the orders from which these appeals have been taken.

### JURISDICTION OF THE COMMONWEALTH COURT OVER THE SUBJECT MATTER

By the Act of July 31, 1968, P. L.    , Act No. 235, The Administrative Code of 1929[3] was variously amended creating the Pennsylvania Crime Commission as a departmental commission within the Department of Justice. Among the powers and duties conferred and imposed upon it by Section 3 of that act (71 P.S. §307-7) is the power to: ". . . require the attendance and testimony of witnesses and the production of documentary evidence relative to any investigation which the commission may conduct in accordance with the powers given it. Such subpoenas shall be signed by the chairman, the executive director and two commissioners and shall be served by any person authorized to serve subpoenas under the laws of the Commonwealth."

This same section further provides: "Upon failure of any person, so ordered to testify or to produce evidence, the commission may invoke the aid of any court of common pleas *of the county wherein the person is summoned to appear or the county wherein the person is served with a subpoena*." (Emphasis added.)

Another section of The Administrative Code of 1929 (Section 520, 71 P.S. §200), generally empowers boards and commissions of the Commonwealth to issue subpoenas and provides for their judicial enforcement:

---

[3] Act of April 9, 1929, P. L. 177, as amended, 71 P.S. §51 et seq.

"Every administrative department, every independent administrative board and commission, every departmental administrative board and commission, every advisory board and commission, and the several workmen's compensation referees, shall have the power to issue subpoenas, requiring the attendance of witnesses and the production of books and papers pertinent to any hearing before such department, board, commission, or officer, and to examine such witnesses, books, and papers.

"Any witness, who refuses to obey a subpoena issued hereunder, or who refuses to be sworn or affirmed, or to testify, or who is guilty of any contempt after summons to appear, may be punished for contempt of court, and, for this purpose, an application may be made to any court of common pleas within whose territorial jurisdiction the offense was committed, for which purpose, such court is hereby given jurisdiction."

Respondents contend these statutory provisions control and that jurisdiction for judicial enforcement of the Commission's subpoena power can be found only in the appropriate court of common pleas; in these cases, either that of Philadelphia where respondents were summoned to appear, or the county in which they were served.

The Commission, however, contends that the Appellate Court Jurisdiction Act[4] (ACJA) confers upon the Commonwealth Court concurrent jurisdiction in the enforcement of its subpoena powers. We agree.

Section 401 of the ACJA confers upon the Commonwealth Court original jurisdiction in "[a]ll civil actions or proceedings by the Commonwealth[5] or any officer

---

[4] Act of July 31, 1970, P. L.    , Act No. 223, 17 P.S. §211.101 et seq.

[5] Section 102(a)(2) of the ACJA defines "Commonwealth" to include departmental administrative boards and commissions.

thereof, acting in his official capacity . . ." with one exception not here relevant, and further provides that such jurisdiction shall be concurrent with that of the several courts of common pleas.

In our opinion, the legislative intent to confer upon the Commonwealth Court concurrent original jurisdiction over the subject matter of these proceedings is clear and unambiguous.

The ACJA postdates by several years the legislation creating the Pennsylvania Crime Commission, and by four decades the provisions of The Administrative Code of 1929 relating generally to the enforcement of the subpoena powers of Commonwealth boards and commissions.

The Judiciary Article (Article V) of the Constitution of Pennsylvania of 1968 created the Commonwealth Court as a State-wide court with subject matter jurisdiction to be as provided by law. The first implementation of this provision and the Schedule to Article V was The Commonwealth Court Act of January 6, 1970, P. L.    , Act No. 185 (1969), 17 P.S. §211.1 et seq. As to subject matter jurisdiction, this initial implementation was essentially designed to transfer to the new Commonwealth Court the State-wide jurisdiction theretofore enjoyed by the Dauphin County Court with respect to State agencies under the Act of April 7, 1870 and a host of statutes upon particular subjects. Section 8(e)(3) of The Commonwealth Court Act, however, specifically excluded from the court's jurisdiction "[a]ny action or proceeding involving the . . . enforcement of any act of Assembly which expressly vests jurisdiction in the courts of common pleas generally. . . ."

The second implementation of these constitutional provisions—the ACJA—contains no such exclusionary language but sets forth the broad, clear and unambiguous language quoted above with respect to the orig-

inal concurrent jurisdiction of this Court with that of courts of common pleas in matters involving the Commonwealth.

Having so provided, the repealer provisions of the ACJA then repeal absolutely Section 8 of The Commonwealth Court Act (Section 509(a)(7)) and generally repeals all acts or parts of acts inconsistent with its provisions (Section 509(f)).

In light of this clear language and legislative history, prior decisional law as to the role of the Dauphin County Court on this subject is no longer persuasive or controlling, nor is a quest in search of legislative intent necessary.

In *Commonwealth v. Queen Coal Co.*, 2 Pa. Commonwealth Ct. 28, A. 2d (1971), we reached the same result in a case involving the question of our original concurrent jurisdiction with that of courts of common pleas under the ACJA and conflicting provisions of the Air Pollution Control Act[6] which vests jurisdiction in courts of common pleas to enforce compliance with that act.

### JURISDICTION OF THE COURT OVER THE PERSON OF RESPONDENTS

It is undisputed that each of the respondents who are contesting the jurisdiction of the Court over their person were personally served with (a) the subpoena issued by the Commission, and (b) certified copies of the petition filed in this Court by the Commission seeking judicial enforcement of its subpoena power, together with a certified copy of the court order granting a rule to show cause and fixing a date for return of the rule and for hearing on the petition.

---

[6] Act of January 8, 1960, P. L. 2119 (1959), 35 P.S. §4001 et seq.

In each case, the petition sets forth in detail that it was being filed incident to a particular investigation being conducted by the Commission, the issuance of subpoena, its service and history of respondent's non-compliance and the statutory authority under which the Commission purports to act. The relief sought is that of judicial enforcement of its subpoena power.

By reason of the averments of the petition, there can be no question that respondents were fully appraised of both the alleged facts and law under which the Commission proposed to act. Why such a petition, duly verified and personally served, is any less "original process" than a similar instrument captioned a complaint,[7] or by some similar nomenclature, defies logic and reason. It would be equally illogical to recognize certain petitions as "original process" and yet to deny similar status to the petitions in question, as, for example, those in declaratory judgment which when properly served constitute original process in lieu of the use of the traditional summons. *See* Sections 1 and 2, Act of May 22, 1935, P. L. 228, 12 P.S. §847-8.

Yet respondents would have this Court conclude that these petitions, duly served, are insufficient. They cite *Commonwealth v. Dauphin County*, 354 Pa. 556, 47 A. 2d 807 (1946)[8] and *Hemphill v. Lenz*, 413 Pa. 9, 195 A. 2d 780 (1963) as commanding the result they urge. While general language found in these decisions lends ostensible support to respondents' position, crucial factual distinctions make them inapplicable. In *Dauphin*

---

[7] In actions at law and in equity within the purview of the Pennsylvania Rules of Civil Procedure, the complaint is "original process" as an alternative to the traditional writ of summons (RCP 1009). Proper service of either produces jurisdiction over the person.

[8] Cited and followed in *Commonwealth v. National Commercial Mutual Fire Insurance Co.*, 71 Dauph. 152, 13 D. & C. 2d 782 (1957).

*County,* an action seeking tax exemption for property was commenced by petition and rule in which the proper cause of action was said to be equity. The Court condemned the use of a petition and rule in such a case and observed that if those served had disregarded the petition and rule it could not be considered "original process" to obtain jurisdiction over their person. It further observed that a *rule* is not properly original process but is ancillary to jurisdiction already acquired; also observing, however, that by statute, a rule is sometimes authorized to be used as original process.

We conceive this case to mean that where an applicable statute or rule of civil procedure prescribes the method by and the manner in which a defendant or respondent is to be served with "process", it must be exclusively followed to obtain jurisdiction over the person. We do not construe it to mean that only the use and service of the traditional writ of summons must be employed (which would be contrary to present practice under the Rules of Civil Procedure), nor that a pleading captioned a petition, if not otherwise regulated by procedural rules, is anything less than "original process" if duly served.

In *Hemphill,* the majority declared (Justice ROBERTS dissenting) that the enforcement of a subpoena issued by a city official under authority of the Philadelphia Home Rule Charter is an independent judicial proceeding requiring "service of process". This was pronounced in the factual context of the subpoena having been personally served but the petition and rule issued thereon for judicial enforcement was not. In so concluding, the majority specifically stated that it was not deciding whether the filing of a petition and rule is a proper method for initiating this type of proceeding, (*See* 413 Pa. at 14 n. 6, 195 A. 2d at 782 n. 6) i.e., judicial enforcement of an administrative subpoena power; the very question before us in the instant cases.

It is our opinion, where a statute confers upon a court jurisdiction to enforce the subpoena power of an administrative agency or official, which statute (or other controlling statute) is silent as to the manner in which or the method by which such jurisdiction is to be invoked, a proper procedure would include the filing of a petition duly verified which clearly discloses the cause complained of and the person or persons against whom it is directed. As so filed and upon being personally served upon respondents, as is the case here, it is the equivalent of "original process" as clearly recognized by modern rules of practice in a host of cases.

To conclude that the jurisdiction of a court to enforce such a subpoena power must be initiated by a document captioned a complaint and then (consistent with RCP 1009) permit the "complaint" to be used as original process, and simultaneously condemn the procedure here employed, is to give precedence to form but totally wanting in substance. Whether a rule issues or does not issue on the petition is irrelevant. If one issues, it directs respondent to answer within a prescribed time or suffer default, thus serving the same purpose as the notice to plead in traditional practice.

We conclude that by reason of personal service of the petitions in question upon the respondents this Court thereby acquired jurisdiction over their persons.

Every reason underlying the historical use and form of original process, i.e., the traditional writ of summons, is served, and better served in that those called upon to respond are at time of service immediately advised of the alleged facts and law upon which complaint is made. The traditional writ of summons serves simply as notice of suit.

For these reasons we entered the orders from which appeals have been taken.