Pennsylvania Crime Commission *v.* Doty and Scirica (Two cases).
In Re: Enforcement of Subpoenas To Bonk, Fallon, Beatty and Sadowl (Four cases).

Argued April 27, 1973 before President Judge Bow-
MAN.

330

*Thomas J. Oravetz,* Deputy Attorney General, for petitioner.

*John F. X. Fenerty,* for respondents.

OPINION BY PRESIDENT JUDGE BOWMAN, June 4, 1973:

These consolidated proceedings are all concerned with four subpoenas issued by the Pennsylvania Crime Commission directed to John Joseph Bonk, James J. Fallon, Frank J. Beatty and Robert C. Sadowl. Indirectly involved are seizure and forfeiture proceedings concerning *23 Electronically Operated Pinball and Console Amusement Machines v. Commonwealth of Pennsylvania* on appeal by the Commonwealth to this Court (No. 481 C.D. 1973) from an order of the Court of Common Pleas of Philadelphia County dismissing preliminary objections to a petition by these same individuals to have a pre-forfeiture hearing to determine the

illegality of the seized machines (No. 73-00-0327, Court of Common Pleas of Philadelphia County 1973).

The subpoenas in question were served[1] between January 22 and January 25, 1973, directing Bonk, Fallon, Beatty and Sadowl to appear at a specified time and place to testify and produce certain documents in connection with the Commission's investigation into the quality of law enforcement in Philadelphia.[2] None of the respondents appeared.

On February 1, 1973, three of the respondents initiated proceedings in the Court of Common Pleas of Philadelphia County, and on February 2, 1973, one respondent initiated identical proceedings in the Court of Common Pleas of Montgomery County in the form of petitions for rule to show cause why the subpoenas should not be quashed. In each proceeding a judge of the respective courts issued a rule returnable three weeks later in Philadelphia and six weeks later in Montgomery County, and issued stay of proceedings in the meanwhile.

On February 9, 1973, the Commission filed in the Supreme Court of Pennsylvania petitions for supersedeas and for writ of prohibition against the respective judges who had entertained the aforesaid proceedings and issued rules thereon, the Commission alleging that they acted beyond a common pleas court's jurisdiction and power (Nos. 314, 315 Misc. Docket Pa. Supreme Court No. 19).

On March 13 and March 15, 1973, the Commission filed preliminary objections in the respective proceedings before the Philadelphia and Montgomery County

---

[1] This power of the Commission is pursuant to Section 923 of the Act of April 9, 1929, P. L. 177, as added by the Act of July 31, 1968, P. L. 754, 71 P.S. §307-7(9).

[2] There was attached to each subpoena an exhibit identifying the documents sought and a copy of the Commission resolution authorizing and identifying the scope of the investigation.

courts. On March 14, 1973, the trial judge in Philadelphia declined to proceed pending action by the Supreme Court in the proceedings before it. On the same day, March 14, 1973, the Supreme Court issued the following orders:

"AND Now, this 14th day of March, 1973, the proceedings instantly before the Court of Common Pleas of Philadelphia County, Criminal Trial Division, at Miscellaneous Docket No. 73-00-0326, in JOHN JOSEPH BONK, AND JAMES J. FALLON, AND FRANK J. BEATTY v. COMMONWEALTH OF PENNSYLVANIA, are herewith transferred to the Commonwealth Court for disposition.

BY THE COURT,

s/ JONES, B. R.,

Chief Justice."

"AND Now, this 14th day of March, 1973, the proceedings instantly before the Court of Common Pleas of Montgomery County, Criminal Trial Division, Miscellaneous Docket No. 27, January Term, 1973, in ROBERT C. SADOWL v. COMMONWEALTH OF PENNSYLVANIA, are herewith transferred to the Commonwealth Court for disposition.

BY THE COURT,

s/ JONES, B. R.,

Chief Justice."

On March 28, 1973, the Commission filed in this Court petitions to enforce the subpoenas[3] issued against the same four respondents (Nos. 411, 412, 413, 414 C.D. 1973). These petitions were duly served as was an order of this Court dated April 9, 1973, which consolidated the proceedings transferred to this Court by the Supreme Court with the Commission's enforcement proceedings initiated here. Hearing and argument on the consolidated proceedings was fixed for April 27, 1973. On that date respondents filed preliminary ob-

---

[3] Footnote 1, *supra.*

jections to the Commission's petitions for enforcement which bring into question the role of this Court with respect to the "proceedings instantly before" the Philadelphia and Montgomery County courts transferred by the Supreme Court to this Court "for disposition."

In the consolidated proceedings before this Court we first heard argument on the legal issues raised in the proceedings transferred to this Court by the Supreme Court and on respondents' preliminary objections to the proceedings initiated in this Court by the Commission. We then received evidence relevant to the latter proceedings which was entirely stipulated. The sufficiency of the evidentiary record to support the enforcement proceedings is questioned by the respondents.

At the outset of the consolidated proceedings hearing we expressed the view that the transfer order of the Supreme Court is susceptible to two interpretations. It could be considered as a direction to this Court to treat said proceedings as though on appeal to this Court, or alternatively, as a direction to treat said proceedings as though they had been originally filed in this Court. In either event, it was our expressed view and is our opinion, that legal issues raised by either interpretation and by the preliminary objections of respondents to the enforcement proceedings initiated by the Commission in this Court could be disposed of in these consolidated proceedings as, taken together, they raise all possible issues of the jurisdiction of common pleas courts and this Court to entertain and act upon petitions to quash subpoenas on the one hand and to enforce subpoenas issued by the Commission on the other.

Respondents' initial argument on the issue of the jurisdiction of a court of common pleas to entertain proceedings to quash Commission-issued subpoenas advances the maxim that a court whose jurisdiction is

questioned should first decide that issue before it is tested in another court of the same judicial system. This maxim would undoubtedly be applicable to the "proceedings instantly before" the Philadelphia and Montgomery County courts where the issue remains undisposed of absent the exercise of the plenary power of the Supreme Court of Pennsylvania in its supervision over our judicial system generally and in particular over alleged attempts by inferior courts to assert jurisdiction where none exists. Had the Supreme Court intended to give expression to the maxim, its obvious action would have been to simply dismiss the proceedings before it. Having considered the matter and then issuing its order to this Court to act, we cannot now apply this maxim to the instant proceedings before us on transfer from the Supreme Court.

Turning to the issue of subject matter jurisdiction, it is our opinion that neither a court of common pleas nor the Commonwealth Court has jurisdiction to entertain any action or proceedings to quash a subpoena issued by the Pennsylvania Crime Commission under existing statutory law which, as presently in force, affords no power or authority to the Commission to enforce its subpoenas and provides only for judicial enforcement of such subpoenas after noncompliance and upon petition of the Commission. In such judicial proceedings all legal issues surrounding the issuance of the subpoenas and the right of individuals with respect thereto may be aired.

Handed down prior to the creation of the Commonwealth Court and the adoption of the Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673, 17 P.S. §211.101, the decision of the Supreme Court in *Cathcart v. Crumlish*, 410 Pa. 253, 189 A. 2d 243 (1963), is, in our opinion, decisive of the issue of whether trial courts in Pennsylvania have jurisdiction to entertain actions or proceedings to quash subpoenas issued by an admin-

istrative body, the enforcement of which can be had only by judicial proceedings initiated after noncompliance. In that case, persons against whom subpoenas had been issued by the District Attorney sought to enjoin response to the subpoenas. The Court said:

"While this is not the typical case seeking to enjoin criminal proceedings, which the courts have traditionally refused to entertain, nevertheless this action has all the earmarks of an intrusion into law enforcement processes which should be looked upon with great circumspection. Despite the fact that litigants are not always sensitive to this problem, courts should be alert to question the invocation of equitable jurisdiction where its use might obstruct the functioning of the district attorney's office.

"Even though appellee does not raise the question, as an appellate court we must take cognizance of the lack of equitable jurisdiction in the court below since section 8-409 of the Philadelphia Home Rule Charter prescribes a specific statutory procedure wherein the validity of a subpoena issued under this section may be tested. See Stahl, Attorney General v. Insurance Company of North America, 408 Pa. 483, 486, 184 A. 2d 568 (1962). This section provides for the district attorney to report any non-compliance to a common pleas court which shall promptly hear arguments on the validity of the subpoena. Under the Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, 46 P.S. §156, it has long been held in various contexts that where a remedy or method of procedure is provided by an act, those procedures should be followed exclusively. See, e.g., Knup v. Philadelphia, 386 Pa. 350, 126 A. 2d 399 (1956). Applying this principle to the case before us, we conclude that appellants cannot question the validity of the subpoena until they are called before the common pleas court.

"Equity jurisdiction is also divested because of the presence of an *adequate* remedy at law. The remedy is adequate since appellants will suffer no irreparable harm, or for that matter any harm at all, if they have to wait until the district attorney invokes the enforcement procedures before they can contest the subpoena. Unlike a judicial subpoena, public officers who are allegedly vested with subpoena power under section 8-409 are not given the power to enforce compliance. Disobedience is not punishable by imprisonment or fine unless it continues after a court has ordered compliance. See Annotation to §8-409, Philadelphia Home Rule Charter. Therefore, appellants are not placed in the unfortunate dilemma of having to disobey the district attorney's subpoenas at their peril in order to contest their validity." 410 Pa. at 255-257, 189 A. 2d at 244-45. [Footnotes omitted.]

We are also of the opinion that the rationale of *Cathcart* is applicable to any form of action or proceedings whether asserted in the form of a complaint in equity or otherwise. Furthermore, assuming that an action or proceeding to quash a subpoena issued by the Commission would be cognizable in some court, it would not lie in courts of common pleas. Section 401 of the Appellate Court Jurisdiction Act, 17 P.S. §211.-401, provides that the Commonwealth Court shall have original and *exclusive* jurisdiction over all civil actions or proceedings against the Commonwealth or any officer thereof acting in his official capacity with certain exceptions not here relevant. Courts of common pleas, therefore, under both the doctrine of *Cathcart* and the provisions of the Appellate Court Jurisdiction Act do not have subject matter jurisdiction over this class of action or proceedings.

We are further of the opinion that this Court is without jurisdiction to entertain and act in this class of proceedings as we do not view Section 401 of the

Appellate Court Jurisdiction Act as intending to create any new or different classes of actions or proceedings as cognizable by the Commonwealth Court but rather as essentially the designation of a particular court to have exclusive jurisdiction with respect to recognized common law actions or proceedings against the Commonwealth or those explicitly created or conferred by statutory law. In this sense Section 401 might be more properly said to speak in terms of venue of causes of action or proceedings against the Commonwealth. In any event, it is legislative implementation of Article I, Section 11, of the Pennsylvania Constitution which authorizes suits against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct. As to subject matter, we view *Cathcart* as equally applicable to this Court's jurisdiction in this class of proceedings absent legislation disclosing a clear intent to subject the Commonwealth to litigation testing a Commission-issued subpoena prior to its initiation of enforcement proceedings.

A second issue of jurisdiction is raised by respondents' preliminary objections to the Commission's enforcement petitions filed in this Court. It involves the question of whether this Court has original *concurrent* jurisdiction with courts of common pleas in subpoena enforcement proceedings. No purpose would be served in setting forth the applicable statutory law nor our reasoning in concluding that the Commonwealth Court enjoys such jurisdiction. This issue was fully covered in our opinion in *In Re: Crime Commission's Subpoena Enforcement Petition*, 2 Pa. Commonwealth Ct. 650, *aff'd*, 446 Pa. 152, 285 A. 2d 494 (1971).

In raising this issue respondents also suggest that we should refrain from exercising our concurrent jurisdiction in the subpoena enforcement proceedings, or at least delay acting upon them, pending the outcome

of other proceedings heretofore mentioned concerning the seizure and forfeiture of certain machines alleged to be gambling devices now on appeal in this Court by the Commonwealth from the lower court's dismissal of its preliminary objections. Respondents' argument on this point seems to be two-fold: (1) if it is ultimately determined that these machines are not illegal per se then there exists no reason or purpose for the Commission subpoenas issued against them, or (2) the proceedings relating to the seized machines are so intimately related to the subpoena enforcement proceedings that they should be consolidated or at least disposed of at the same time. There is nothing in the record before us demonstrating that the scope or purpose of the subpoenas sought to be enforced is limited to the discovery of facts pertaining to these machines. The Commission is not a party to said proceedings and has no direct interest in the outcome thereof. To delay the instant subpoena enforcement proceedings awaiting the outcome of these other proceedings is neither necessary nor warranted under the circumstances. It would serve only to further delay the already long delayed efforts of the Commission to carry out the purpose of its investigation.

Finally, respondents argue that the Commission has failed to establish its right to enforcement of the subpoenas in question. As previously noted, the evidentiary record incident to the enforcement proceedings initiated in this Court was entirely stipulated. Although afforded an opportunity, respondents presented no testimony or other evidence whatsoever. As thus stipulated, the record discloses that the subpoenas in question were issued by the Commission and duly served; that the documents sought to be produced were identified by an attachment thereto, as was the purpose and scope of the investigation by copy of Commission resolution adopted incident thereto; and that each of

the respondents failed or refused to respond to the subpoenas.

On several occasions we have considered and decided the quantum of evidence required to be presented by the Commission in enforcement proceedings, the issues that may be raised by a respondent in such proceedings and the burdens upon the respective parties. *Pennsylvania Crime Commission v. Nacrelli*, 5 Pa. Commonwealth Ct. 551 (1972) ; *In Re: The Petition of the Pennsylvania Crime Commission for an Order to Commonwealth Development Association of Pennsylvania, Inc. to Produce Documentary Evidence*, No. 905 C.D. 1971 (not reported). The stipulated record before us supports the Commission's entitlement to enforcement of the subpoenas.

Accordingly, we enter the following

## ORDER

Now, June 4, 1973, it is hereby ordered, adjudged and decreed:

1. That the Court of Common Pleas of Philadelphia County was and is without jurisdiction to entertain proceedings before it docketed to Criminal Trial Division at Miscellaneous Docket No. 73-00-0326 in *John Joseph Bonk, and James J. Fallon, and Frank J. Beatty v. Commonwealth of Pennsylvania;* orders of court issued thereunder are hereby vacated as improvidently issued and said proceedings are set aside.

2. That the Court of Common Pleas of Montgomery County was and is without jurisdiction to entertain proceedings before it docketed to Criminal Trial Division Miscellaneous Docket No. 27 January Term, 1973, in *Robert C. Sadowl v. Commonwealth of Pennsylvania;* orders of court issued thereunder are hereby vacated as improvidently issued and said proceedings are set aside.

3. That this Court having original concurrent jurisdiction to entertain proceedings by the Pennsylvania Crime Commission to enforce subpoenas issued by it filed to Nos. 411, 412, 413, 414 C.D. 1973, respondents' preliminary objections to said enforcement proceedings are hereby overruled.

4. That the Pennsylvania Crime Commission, having established its entitlement to judicial enforcement of subpoenas, duly issued and served upon respondents, to which respondents failed or refused to respond,

(a) at No. 411 C.D. 1973, John Joseph Bonk shall appear before the Pennsylvania Crime Commission at a time and place to be determined by the Commission, to be sworn and to answer such questions as may be put to him and to produce such documents as directed in the subpoena served upon him.

(b) at No. 412 C.D. 1973, James J. Fallon shall appear before the Pennsylvania Crime Commission at a time and place to be determined by the Commission, to be sworn and to answer such questions as may be put to him and to produce such documents as directed in the subpoena served upon him.

(c) at No. 413 C.D. 1973, Frank J. Beatty shall appear before the Pennsylvania Crime Commission at a time and place to be determined by the Commission, to be sworn and to answer such questions as may be put to him and to produce such documents as directed in the subpoena served upon him.

(d) at No. 414 C.D. 1973, Robert C. Sadowl shall appear before the Pennsylvania Crime Commission at a time and place to be determined by the Commission, to be sworn and to answer such questions as may be put to him and to produce such documents as directed in the subpoena served upon him.