**FEDERAL TRADE COMMISSION,**
Petitioner-Appellee,

v.

**HALLMARK, INC., and Ben Cole, Vice President, Hallmark, Inc., Respondents-Appellants.**

No. 12467.

United States Court of Appeals
Seventh Circuit.
March 30, 1959.

434

Seymour Rady, Chicago, Ill., B. Paul Noble, Washington, D. C., for appellant.

Robert Tieken, U. S. Atty., Chicago, Ill., James E. Corkey, Asst. General Counsel, Carleton A. Harkrader, Attorney, Federal Trade Commission, Washington, D. C., for appellee.

Before DUFFY, Chief Judge, and HASTINGS and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

The Federal Trade Commission, hereinafter called the "Commission", applied to the District Court, under authority of Section 9, Federal Trade Commission Act (15 U.S.C.A. § 49) for order requiring Hallmark, Inc., to produce certain books, papers, and documents listed in a subpoena *duces tecum*, and requiring Ben Cole, Vice President of Hallmark, Inc., to testify in accordance with a subpoena *ad testificandum*, both issued by the Commission on March 14, 1958.

For several years, the Commission had been conducting an investigation (its file No. 552 1105) to determine whether Hallmark, Inc., was using misleading and deceptive representations, in violation of Section 5 of the Act (15 U.S.C.A. § 45) in advertising, sale and distribution in commerce of Hallmark and Waltham watches.

In the course of the investigation, the Commission isued the two administrative subpoenas, both returnable Monday, April 7, 1958, before Daniel Zmuda, attorney and examiner, who was also the agency investigator in charge of the investigation, for the Commission.

On Friday, April 4, 1958, Hallmark, Inc., and Ben Cole, (both hereinafter referred to as "Hallmark") moved to quash the subpoenas. The motion was denied the same day by order issued over the official seal of the Commission, stating on its face: "By the Commission", and signed by the Secretary of the Commission.

In conferences between Zmuda and Hallmark's attorney, prior to the issuance of the subpoenas, Zmuda made available to Hallmark's attorney an "Outline of Procedure" which indicated that the information sought related in part to proposed analysis of the spread between cost and price, or "mark-up".

The return date of the subpoenas was changed by agreement to April 14, 1958. Hallmark's attorney on behalf of Hallmark appeared and refused obedience to the subpoenas, in so far as they pertained to invoices and purchase orders which would permit analysis of cost.

On September 17, 1958, the District Judge entered an order enforcing the subpoenas and setting new return dates. This appeal followed.

Hallmark's position may be summarized as follows:

1. Denial of the motion to quash the subpoenas without oral hearing and opportunity to present argument violated the Administrative Procedure Act (5 U.S.C.A. §§ 1001–1011).

2. The subpoenas were improperly made returnable before an investigative employee, not qualified as a Hearing Officer under the Administrative Procedure Act, who sought thus to secure material for use in his investigation.

3. Mark-up between cost and the wholesale price and between wholesale and retail price is irrelevant to investigation of alleged use of deceptive representations in advertising, sale and distribution.

Both parties agree that Hallmark's assertion of a right to oral argument on motion to quash the subpoenas presents a novel question.

Hallmark relies in part on certain sections of the Administrative Procedure Act which provide for hearings on agency processes exercised under a rule making, adjudicative, or licensing power. Sections 1004(b) and ·(c) and 1005(a) [1] cited by Hallmark follow an introductory unnumbered paragraph which reads:

"§ 1004 Adjudications

"In every case of adjudication required by statute tò be determined on the record after opportunity for an agency hearing, except to the extent that there is involved (1) any matter subject to a subsequent trial of the law and the facts *de novo* in any court; (2) the selection or tenure of an officer or employee of the United States other than examiners appointed pursuant to section 1010 of this title; (3) proceedings in which decisions rest solely on inspections, tests, or elections; (4) the conduct of military, naval, or foreign affairs functions; (5) cases in which an agency is acting as an agent for a court; and (6) the certification of employee representatives."

█ We do not agree, as will appear below, that the investigation involved in this case presently qualifies as an adjudicative proceeding. In any event, the Commission may invoke Court aid in cases of disobedience to a subpoena, which will result in "a subsequent trial

1. "§ 1004. Adjudications

\* \* \* \* \* \*

"Procedure

"(b) The agency shall afford all interested parties opportunity for (1) the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment where time, the nature of the proceeding, and the public interest permit, and (2) to the extent that the parties are unable so to determine any controversy by consent, hearing, and decision upon notice and in conformity with sections 1006 and 1007 of this title.

"Authority and functions of officers and employees

"(c) The same officers who preside at the reception of evidence pursuant to section 1006 of this title shall make the recommended decision or initial decision required by section 1007 of this title except where such officers become unavailable to the agency. Save to the extent required for the disposition of ex parte matters as authorized by law, no such officer shall consult any person or party on any fact in issue unless upon notice and opportunity for all parties to participate; nor shall such officer be responsible to or subject to the supervision or direction of any officer, employee, or agent engaged in the performance of investigative or prosecuting functions for any agency. No officer, employee, or agent engaged in the performance of investigative or prosecuting functions for any agency in any case shall, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 1007 of this title except as witness or counsel in public proceedings. This subsection shall not apply in determining applications for initial licenses or to proceedings involving the validity or application of rates, facilities, or practices of public utilities or carriers; nor shall it be applicable in any manner to the agency or any member or members of the body comprising the agency."

"§ 1005. Ancillary matters

"Except as otherwise provided in this chapter—

"Appearance and representation of parties

"(a) Any person compelled to appear in person before any agency or representative thereof shall be accorded the right to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative. Every party shall be accorded the right to appear in person or by or with counsel or other duly qualified representative in any agency proceeding. So far as the orderly conduct of public business permits, any interested person may appear before any agency or its responsible officers or employees for the presentation, adjustment, or determination of any issue, request, or controversy in any proceeding (interlocutory, summary, or otherwise) or in connection with any agency function. Every agency shall proceed with reasonable dispatch to conclude any matter presented to it except that due regard shall be had for the convenience and necessity of the parties or their representatives. Nothing herein shall be construed either to grant or to deny to any person who is not a lawyer the right to appear for or represent others before any agency or in any agency proceeding."

of the law and facts *de novo* * * * " thus bringing the matter within the first exception noted above.

Section 1005(a) provides for an interested person to appear before any agency or its responsible officers or employees, so far as the orderly conduct of public business permits. Oral hearing before the Commission itself is not provided. In the instant case, the return date of the subpoenas might have had to be postponed, thus perhaps interfering with the orderly conduct of public business.

■ In contending that Rule 45(b), Federal Rules of Civil Procedure, 28 U.S.C.A., and cases interpreting its operation, may be helpful to construe statutes granting the power of administrative subpoena, Hallmark draws a false analogy to subpoenas issued by a District Court. Disobedience to subpoenas issued by a District Court subjects the witness to possible punishment for contempt. Administrative subpoenas do not subject the witness to punishment for contempt until the agency has secured enforcement from a District Court after proceedings in which, as in the case before us, the witness has an opportunity to raise all issues pertinent to a motion to quash a subpoena alleged to be unreasonable or oppressive.

In support of its view of the requirements of a proper administrative hearing, Hallmark cites two cases which are readily distinguished. Neither involved a subpoena. Green Spring Dairy Co. v. Commissioner of Internal Revenue, 4 Cir., 1953, 208 F.2d 471, concerned an adjudicative proceeding to determine a tax deficiency. Morgan v. United States, 1937, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129, related to a rule making proceeding which fixed maximum rates to be charged by stockyards commission men.

■ The order denying Hallmark's motion to quash states that it was "Before Federal Trade Commission", (listing the participating Commissioners), and that it was determined "By the Commission". Absent evidence of irregularity, the mere fact that the Secretary signed it, as he signs all orders of the Commission, does not render the order suspect.

Hallmark contends that the subpoenas ought to have been returnable before an independent hearing examiner as described in the Administrative Procedure Act (5 U.S.C.A. § 1010) and that the Federal Trade Commission Act (15 U.S.C.A. § 49) requires return before a member of the Commission, or an independent hearing examiner.

As yet, however, the Commission has issued no complaint against Hallmark. The Commission seeks to acquire information on which to determine whether or not there is reason to believe that Hallmark has been using deceptive practices in commerce, and whether or not it appears that further proceedings would be in the public interest. At the conclusion of its investigation, the Commission may or may not, issue a formal complaint giving rise to an adjudicative proceeding to which the Administrative Procedure Act would be applicable.

The Federal Trade Commission Act empowers the Commission to investigate the practices and management of any corporation engaged in commerce (15 U.S.C.A. § 46) and to require by subpoena the attendance of witnesses and the production of all documentary evidence relating to any matter under investigation (15 U.S.C.A. § 49).

"Adjudication" is defined by 5 U.S.C.A. § 1001(d) as meaning "agency process for the formulation of an order". The same section defines "order" as meaning "the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency in any matter other than rule making but including licensing." The present investigation does not qualify as an adjudicative adversary process for which an independent hearing examiner is required by the Administrative Procedure Act. The investigation may eventually lead to an adjudicative proceeding, but the investigation itself will result in no final disposition of the rights and duties of Hallmark. In

438

Pinkett v. United States, D.C.D.Md.1952, 105 F.Supp. 67, cited by Hallmark, the District Court did set aside an order of the Interstate Commerce Commission as invalid, in part because the examiner who conducted the hearing was not appointed in accordance with the requirements of the Administrative Procedure Act. In that case, however, the Interstate Commerce Commission had directed issuance of a certificate of public convenience and necessity, an adjudicative act, as a result of a hearing before the unqualified examiner without notice to interested parties.

It is uncontested that Section 9 of the Federal Trade Commission Act (15 U.S.C.A. § 49)[2] grants two kinds of powers; access and subpoena. Citing F.T.C. v. Tuttle, 2 Cir., 1957, 244 F.2d 605 as authority for its analysis of Sec. 9,[3] Hallmark argues that the Commission's duly authorized "agents" may have access to documentary evidence of any corporation, but, if it becomes necessary for the Commission to issue subpoenas, then only "members and examiners" of the Commission may examine witnesses on return of such subpoenas. Zmuda has been designated an "examiner", but Hallmark contends that "examiner" as used in the Federal Trade Commission Act must be construed to include only independent hearing examiners as defined in the later Administrative Procedure Act.

This identical question was considered in Federal Trade Commission v. Scientific Living, D.C.M.D.Pa.1957, 150 F.Supp. 495, appeal dismissed 3 Cir., 1957 unreported, and decided adversely to Hallmark's position. Hallmark argues that the District Court in Scientific Living misconstrued the applicable statutory provisions. We cannot agree. The opinion seems well reasoned and sound. It has been followed in Judge Bryan's opinion filed January 14, 1959, In the Matter of the Application to Enforce an Administrative Subpoena *Duces Tecum* of the Federal Trade Commission v. Waltham Watch Company, D.C.S.D.N.Y., 169 F.Supp. 614.

There is no question that the Commission is here conducting an investigation under Sections 46 and 49 and not issuing a complaint under Section 45 of the Act.

Hallmark also argues that "hearing" as prescribed in the Administrative Procedure Act (5 U.S.C.A. § 1006) and made specifically applicable to hearings contemplated by Section 1003 (Rule Making) and 1004 (Adjudications) was intended to apply also to Section 1005 (Ancillary Matters). We find no basis for this conclusion.

■ Neither the Administrative Procedure Act nor the requirements of due process bar making these subpoenas returnable before Zmuda.

Hallmark further protests that Specifications 2 and 5 of the subpoena *duces tecum*[4] seek production of material irrelevant to the investigation.

2. "§ 49. Documentary evidence; depositions; witnesses

"For the purposes of sections 41–46 and 47–58 of this title the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpoenas, and members and examiners of the commission may administer oaths and affirmations, examine witnesses, and receive evidence. * * * "

3. The Tuttle case differs from that before us in that it concerned a subpoena duces tecum issued to third parties after complaint had been filed by the Commission charging violation of the Clayton Act.

4. "Specification 2. All memoranda, bulletins, and other correspondence and a specimen of each different tag, label and labeling relating to the computation, establishment and publication of wholesale and retail prices for 'Hallmark' and 'Waltham' watches sold during the calendar year of 1957. * * * Specification 5. All invoices of sales of 'Hallmark' and 'Waltham' watches issued by Hallmark

In the District Court, Hallmark contended that as a manufacturer-importer, engaged in sale or distribution to the wholesale trade, it does not sell directly to the customer; that "fictitious prices" usually consist of misrepresentation of retail prices as "regularly sold at" or "formerly sold at" for some higher figure than the retail customer is asked to pay.

The Commission asserts that one facet of its investigation involves the question of whether Hallmark is or is not a retailer. The documents sought would be relevant in that respect. Even if Hallmark sells only to the wholesale trade, Hallmark could supply dealers with the means of misleading the public as to the customary selling prices of its watches by ticketing them with fictitious "retail" prices. The tags themselves, freely produced by Hallmark, are of little value without the actual selling prices of the watches as shown by the documents sought.

Although the Commission asserts that the subpoenas themselves must govern, rather than the "Outline of Procedure" supplied as a courtesy for Hallmark's convenience, "mark-up" would be relevant to an investigation into alleged ticketing with fictitious retail prices.

█ Unlike the subpoenas condemned in F.T.C. v. American Tobacco Co., 1923, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696; Federal Trade Commission v. Baltimore Grain Co., D.C.D.Md.1922, 284 F. 886; F.T.C. v. Smith, D.C.S.D.N.Y.1929, 34 F.2d 323, and U. S. v. Basic Products, D.C.W.D.Pa.1919, 260 F. 472, cited by Hallmark, Specifications 2 and 5 of the subpoena *duces tecum* before us are not unduly broad general demands but are limited to documents pertinent to the investigation described in the subpoena.

As the investigation is not a public one and the documents will routinely go into the Commission's files, we do not reach the issue of whether or not the documents contain trade secrets.[5]

The judgment of the District Court is affirmed.

---

Inc. during the months of May 1957 and November 1957 and the corresponding customer purchase orders."

5. "§ 46. Additional powers of commission
"The commission shall also have power—
*　　*　　*　　*　　*
"Publication of information; reports
"(f) To make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use."