Mr. Justice McWilliams
delivered the opinion of the Court.
This is the second original proceeding concerning the People ex rel. Orcutt, Commissioner of Agriculture for the State of Colorado, on the one hand, and Shoenberg Farms, Inc., Rocky Mountain Dairy Products and one Edward P. Tepper, who is the president and principal officer of each of the two corporations, on the other. Each of these two original proceedings touches upon the same matter, namely the degree of formality requisite to the judicial enforcement of a subpoena issued by an administrative agency, the subpoena in the instant case having been issued by the Commissioner of Agriculture. A brief recital of certain background information will place the present controversy in focus.
C.R.S. 1963, 7-3-19(3) provides, in part, that the Commissioner of Agriculture, who will hereinafter be referred to as Orcutt, may hold hearings and in connection therewith may “subpoena witnesses and issue subpoenas for the production of books, records, or documents of any kind.” Pursuant to this statute on August *387 26, 1966 Orcutt issued two subpoenas duces tecum to Tepper and each was personally served upon Tepper on August 29, 1966.
These subpoenas called for Tepper to appear at a hearing to be held before Orcutt on September 9, 1966. Tepper, however, failed to appear at this hearing, though a special appearance was made at this hearing on behalf of Shoenberg and Rocky Mountain. Counsel then proceeded to challenge Orcutt’s jurisdiction to conduct the hearing and moved to dismiss the proceedings for lack of jurisdiction. This motion was denied, whereupon counsel for the aforementioned corporations left the hearing. Under such circumstance Orcutt determined that the hearing could not proceed without the testimony and production of documents by Tepper. Accordingly, Orcutt continued the hearing and directed that effort be made to comply with the subpoenas theretofore served upon him.
C.R.S. 1963, 7-3-19(3) also provides, in part, as follows:
“. . . . Upon failure or refusal of any witness to obey any subpoena the Commissioner may petition the district court, and upon proper showing, the court may enter an order compelling the witness to appear and testify or produce documentary evidence. Failure to obey the order of court shall be punishable as a contempt of court.”
Pursuant then to this particular portion of the statute, on September 16, 1966 Orcutt filed a petition in the Denver District Court seeking an order that Tepper be compelled to comply with the aforementioned subpoenas. This petition generally recited the background facts set forth above, and was supported by an affidavit of Orcutt as well as copies of the two subpoenas personally served on Tepper. Upon this showing, on September 19, 1966 the Honorable Richard L. Ott, then a Denver District Judge, issued an ex parte order directing Tepper to comply with the subpoenas and to *388 appear before Orcutt on September 27, 1966. This order was personally served upon Tepper on September 20, 1966.
On September 23, 1966 Shoenberg, Rocky Mountain and Tepper brought an • original proceeding in' this Court against Orcutt and the Denver District Court, contending that Judge Ott’s order- of • September 19, 1966 was a nullity because Orcutt had failed to comply with the Colorado Rules of - Civil Procedure. In other words, the petitioners in the earlier original proceeding alleged that it was improper for -Orcutt-to proceed by simply filing- a petition, and ■ that he should have first filed a complaint and then effected service of process upon Tepper, and that Tepper then should have been afforded the opportunity to file his answer. Presumably a trial on • any disputed issues would ensure, and, according to the petitioners in the earlier proceeding, only after the resolution of any disputed issues would the trial court be in position -to rule upon the request that Tepper be compelled to obey the subpoenas.
On September 23, 1966 this Court did issue the rule to show cause -thus requested by Shoenberg ’and Rocky Mountain and Tepper, and stayed all. proceedings between the parties then pending in the Denver District Court. Orcutt -and the Denver -District Court in due time filed their response thereto.
Thereafter, on October 20, 1966 to be exact, this Court vacated the stay order which it had previously issued and denied the relief-prayed for by Shoenberg, Rocky Mountain and Tepper in their petition. In thus discharging the rule which this court had theretofore issued, -we did not however issue an opinion in connection therewith. In retrospect -we perhaps should have done so, and by so doing we might possibly have avoided further delay in this matter.
In any event, Orcutt then returned to the Denver District Court and by petition again sought an order to require Tepper to comply-with the subpoenas thereto *389 fore served on him. Upon a showing which the district court deemed to be sufficient, it then issued an amended order that Tepper comply with the subpoenas and appear before Orcutt on January 11, 1967. On January 9, 1967 counsel for Shoenberg, Rocky Mountain and Tepper filed with the Denver District -Court a motion to quash the aforementioned order of court. In the motion to quash the complaint was again made that Orcutt had failed to comply with our Rules of Civil Procedure. Specifically, it was alleged that no complaint was ever filed by Orcutt, no summons had ever issued, no answer, was filed, and the like.
This motion to quash was thereafter heard by Acting District Judge Albert T. Frantz. On February 16, 1967 Judge Frantz granted the motion to quash, “with leave to serve the defendants by regular process.” In brief, Judge Frantz stated that in his opinion C.R.S. 1963, 7-3-19(3) “used language indicating that a separate and distinct judicial proceeding must be undertaken to enforce an administrative subpoena.” ■ Accordingly, Judge Frantz held that the court proceeding to obtain an order that Tepper comply with the subpoena was not in anywise “ancillary” to the prior issuance of the subpoena by Orcutt. Hence, reasoned Judge Frantz, Orcutt had to proceed in consonance with our Rules of Civil Procedure, with service to be effected by “regular process.”
It was in this situation, then, that Orcutt has now instituted this second original proceeding between the parties. Orcutt in his petition for a rule tó show cause claims that the trial court’s granting of the motion to-quash was patently erroneous, and that inasmuch as: it is not a final judgment re viewable by writ of error, his only remedy is -an original. proceeding. On the-strength of the showing thus made, we thereupon issued a second rule to show cause. The respondents have .now filed a response thereto, the matter has been orally *390 argued, and the matter once again awaits our determination.
At the outset it should perhaps be noted that R.C.P. Colo. 81 specifically states that “these rules do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute.” Hence, if the- procedure and practice set forth in C.R.S. 1963, 7-3-19(3) is in any particular inconsistent or in conflict with our Rules, the statute — and not the Rules — -would govern.
Actually, the real problem is to ascertain the meaning of C.R.S. 1963, 7-3-19(3). And in this regard, as. is illustrated in the cases bearing on this subject, the problem then narrows down to a determination as to whether the procedure provided in the statute is only “ancillary” to the earlier issuance of the subpoenas by Orcutt, or on the contrary constitutes a “separate and distinct proceeding.”
In determining that Orcutt’s request- for an order of court that Tepper be made to comply with the two subpoenas previously served on him constituted a distinct judicial proceeding and was therefore subject to our Rules of Civil Procedure, the trial court adopted the reasoning and the result which obtained in Hemphill v. Lenz, 413 Pa. 9, 195 A.2d 780 and F.T.C. v. Hallmark, Inc., 265 F.2d 433. In our view of the matter each of these is distinguishable from the instant controversy.
In the Hemphill case the provision of the Philadelphia Home Rule Charter providing for the judicial enforcement of subpoenas issued by an administrative agency is markedly different from C.R.S. 1963, 7-3-19(3). In the former it is rather clear that the court proceeding contemplated by the applicable charter provision was an independent judicial proceeding, and not merely one which was ancillary to the prior issuance of the subpoena by the administrative officer.
Nor do we regard F.T.C. v. Hallmark, Inc., supra, as *391 lending support to the action taken by the respondent court. There it was stated that a court should not judicially enforce an administrative subpoena until the “witness has an opportunity to raise all issues pertinent to a motion to quash a subpoena alleged to be unreasonable or oppressive.” But in our view a motion to quash a subpoena on the ground that it is “unreasonable or oppressive” stands on different footing than does a motion to quash a subpoena on the ground that our Rules of Civil Procedure have not been followed.
A case which we believe to be more in point, the rational of which appeals to us, is Cudahy Packing Co. v. N.L.R.B., 117 F.2d 692. There the N.L.R.B. sought judicial enforcement of one of its subpoenas. There, as here, it was argued that the effort to judicially enforce the administrative subpoena constituted an independent proceeding which had to be initiated by the filing of a complaint, that process must then issue and that the issues be framed as in any ordinary action at law or equity. The United States Court of Appeals, Tenth Circuit, rejected this contention and held that the act there under consideration did not require that degree of judicial formality prior to the issuance of a court order to enforce an N.L.R.B. subpoena. The proceeding was held to be ancillary in nature, and the filing of a complaint and the issuance of process were held not to be required by the Act of Congress providing for the judicial enforcement of an N.L.R.B. subpoena.
Counsel for the respondents in their brief state that Cudahy v. N.L.R.B., supra, was on certiorari reversed in a memorandum opinion by the United States Supreme Court. No citation of this claimed reversal was contained in counsel’s brief, and our search has failed to reveal that this particular Cudahy case was in fact so reversed. Indeed certiorari in that particular case was not even sought.
 Be all this as it may, this is a matter of first impression in Colorado and hence cases from other *392 jurisdictions bearing on this matter, though they may be helpful, are nevertheless not controlling. Our study of C.R.S. 1963, 7-3-19(3) convinces us that the legislature did not intend to make a so-called “federal case” out of the effort of Orcutt-to get an order of court that Tepper comply with its subpoena. To the contrary, in our view, by the very language it used the legislature intended that the procedure should be rather summary in nature. Certainly, if' Orcutt’s ■ request is to be treated in all respects as -an ordinary civil proceeding, a recalcitrant witness, such ■ as Tepper-, could, as he has, slow down to a virtual standstill the operation of this particular administrative agency by taking advantage of the law’s well-known delay. If- the legislature intended that such proceeding was to be handled- as just another civil proceeding, it could have said so. But it did not, and from the language of the statute itself, it is apparent to us that the legislature intended to provide a simplified procedure for the judicial enforcement of administrative subpoenas.
Permeating the entire brief of the respondents is the continuing suggestion that unless Orcutt is made to comply with our Rules of Civil Procedure, Tepper is somehow at the mercy of Orcutt and that the courts are powerless to prevent an abuse of power by Orcutt. Such is not the case. Those served with such a subpoena may, of course, file a motion to quash if they feel, for example, that the subpoena calls for information that is not reasonably related to the matter under inquiry by the administrative body, or is otherwise oppressive or unreasonable in its demands.. By. this opinion we are not precluding the, consideration of such a motion to quash. By this opinion we are saying, however, that the respondent court erred in granting a motion to quash the subpoenas based upon the failure of Orcutt to comply with the Rules of Civil Procedure by filing a complaint, -issuing process, permitting the filing of an answer *393 and generally treating the matter like a typical civil proceeding.
Finally, there is some contention that this is not a proper subject for an original proceeding. But in our view this is not an instance where Orcutt seeks to interfere with an inferior court in the exercise of a discretionary power. Under the 'terms of this statute Judge Ott may have had a degree of discretion when in the first instance he entered an order that Tepper comply. But certainly Judge Frantz, under- the circumstances, had no such discretion, and his order being interlocutory in nature is not subject to review by writ of error. We conclude therefore that the instant proceeding is within the ambit of Hoen v. District Court, 159 Colo. 451, 412 P.2d 428.
The Rule is made absolute and the respondent court is hereby ordered to vacate its order of February 16, 1967. Further- proceedings shall be consonant with the views herein expressed.
Mr. Chief Justice Moore not participating.