**Philip A. FEIGIN, as Securities Commissioner for the State of Colorado, Petitioner,**

v.

**COLORADO NATIONAL BANK, N.A., Respondent.**

No. 94SC20.

Supreme Court of Colorado, En Banc.

June 12, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Merrill Shields, Deputy Atty. Gen., Richard Djokic, First Asst. Atty. Gen., Denver, for petitioner.

Gorsuch, Kirgus, L.L.C., Mark C. Hansen, Keith F. Woods, Randall F. Komisarek, Denver, for respondent.

Raymond T. Slaughter, Katherine M. Clark, Denver, for amicus curiae Colo. Dist. Attys. Council.

Justice KIRSHBAUM delivered the Opinion of the Court.

In this case the trial court entered an order directing the petitioner, State of Colorado Securities Commissioner Philip A. Feigin (the commissioner), to reimburse the respondent, Colorado National Bank, N.A. (the bank), for costs incurred by the bank in complying with an administrative subpoena duces tecum issued by the commissioner pursuant to the Colorado Securities Act (the Act). §§ 11–51–101 to –908, 4B C.R.S. (1994 Supp.). The commissioner has appealed that order.[1] We conclude that under the circumstances the trial court abused its discretion. We therefore reverse the trial court's order and remand the case to that court with directions.

## I

On May 24, 1993, the commissioner issued an administrative subpoena duces tecum to the bank pursuant to section 11–51–601(2), 4B C.R.S. (1994 Supp.), of the Act requiring the production of various bank records relating to the business activities of Replen–K, Inc. In response to the subpoena, the bank produced numerous monthly bank statements of Replen–K, Inc. and by telephone conversations and written communications assisted the commissioner in narrowing the scope of the inquiry.

On July 27, 1993, pursuant to the Act, the commissioner issued the administrative subpoena duces tecum underlying this appeal. The subpoena directed the bank to produce, on or before September 1, 1993, all deposit records, wire transfer information, specified miscellaneous debits and related items, and all canceled checks in the amount of $150 or more with respect to Replen–K, Inc. for the period of January 1991 to April 1993.

By letter dated August 11, 1993, the bank requested the commissioner to make an advance payment of $2,360 for anticipated expenses of locating and copying the documents specified in the subpoena. On September 24, 1993, the commissioner filed a Verified Application for Ex Parte Order Enforcing Subpoena Duces Tecum in the trial court, pursuant to section 11–51–601(3), 4B C.R.S. (1994 Supp.), seeking enforcement of the subpoena. That same day the trial court, ex parte, entered an order directing the bank to comply with the terms of the subpoena.

On October 1, 1993, the bank filed a motion for reconsideration of the trial court's enforcement order. The bank did not directly challenge the substance of the order, but did request the trial court to require the commissioner to assume responsibility for payment of expenses incurred by the bank in complying with the subpoena. The bank argued that in view of the fact that section 11–51–601(2) of the Act contains no provisions respecting costs of compliance with administrative subpoenas, the protections afforded to recipients of subpoenas by C.R.C.P. 45(b) in civil litigation must be deemed applicable to enforcement proceedings initiated by the commissioner pursuant to the Act. The commissioner argued in response that in the absence of legislation concerning responsibility for costs associated with the production of information pursuant to administrative subpoenas the commissioner has no authority to pay for expenses of complying with such subpoenas. The commissioner also argued that for purposes of C.R.C.P. 81(a), proceedings to enforce administrative subpoenas filed pursuant to the Act are ancillary proceedings rather than special statutory proceedings and therefore are not subject to the provisions of C.R.C.P. 45(b).

The trial court subsequently issued an order directing the bank to make the requested documents available to the commissioner for reproduction at the commissioner's expense or, alternatively, on the condition that the commissioner reimburse the bank for the bank's reproduction costs. The trial court held that C.R.C.P. 45(b) is applicable to subpoena enforcement proceedings initiated pursuant to the Act.

## II

On March 16, 1994, during the pendency of this appeal, the trial court, pursuant to

---

**1.** We granted the commissioner's request to assume jurisdiction over this appeal prior to the determination by the court of appeals of the issues raised herein. C.A.R. 50.

Crim.P. 41, issued a search warrant for the seizure of documents maintained by the bank relating to the business activities of Replen–K, Inc. The warrant authorized the attorney general to seize the documents listed in the administrative subpoena issued on July 27, 1993, as well as other documents. On May 6, 1994, the trial court filed a notice suggesting that the issue raised by this appeal may be moot because the commissioner had in fact received the documents requested in the July 27, 1993, administrative subpoena.[2] The commissioner and the bank contend that the issue is not moot and, even if technically moot, should nevertheless be determined. We agree with the parties' position.

■■■ A case otherwise moot may nevertheless be adjudicated if the controversy is one capable of repetition but also capable of evading review. *Colorado–Ute Elec. Ass'n, Inc. v. Public Utils. Comm'n,* 760 P.2d 627, 633 (Colo.1988); *Goedecke v. State Dept. of Insts.,* 198 Colo. 407, 410 n. 5, 603 P.2d 123, 124 n. 5 (1979) (quoting *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)); *Star Journal Publishing Corp. v. County Court,* 197 Colo. 234, 236, 591 P.2d 1028, 1029 (1979). Furthermore, a case is not moot where interests of a public nature are asserted under conditions that may be repeated immediately. *Page v. Blunt,* 126 Colo. 324, 327, 248 P.2d 1074, 1075 (1952).

■■■ Initially, we note that neither party to this appeal has complied with the trial court's November 4, 1993, enforcement order. We assume that whatever documents the bank has produced were produced pursuant to the terms of the search warrant.[3] The record does not suggest that the commissioner paid any of the expenses incurred by the bank in reproducing the documents. The enforcement order may well be deemed of no practical effect. However, the commissioner can effectively prevent any appellate court from addressing the issue before us in similar circumstances by obtaining a search warrant

pursuant to Crim.P. 41 for the production of materials initially demanded by an administrative subpoena. According to a supplemental record filed by the parties in this case, sixteen administrative subpoenas were issued by the commissioner to the bank and its affiliates in connection with various investigations conducted pursuant to the Act from January 1992 until May 1994; the bank has submitted invoices to the commissioner requesting reimbursement of expenses incurred in complying with those subpoenas totalling approximately $4,900; and the commissioner has refused to pay those costs on the ground that such reimbursement is not authorized by the Act. There is thus a reasonable certainty that these parties will litigate this issue again. The issue is one of considerable public significance and has not been determined by this court. Under these circumstances, we conclude that the issue of the trial court's authority to require the commissioner to pay costs incurred by the bank in complying with the July 27, 1993, administrative subpoena is a question that is capable of repetition but that could avoid judicial review. We will therefore address the issue.

### III

### A

■■ The commissioner argues that the trial court erred in holding that the provisions of C.R.C.P. 45(b) are applicable to the enforcement proceeding initiated on September 24, 1993, and that the trial court had no authority to impose costs of reproducing the requested documents on the commissioner in this case. We agree with the commissioner's argument that C.R.C.P. 45(b) is not directly applicable to enforcement proceedings filed pursuant to the Act. However, we reject the commissioner's argument that the trial court had no authority in this proceeding to require the commissioner to pay a portion of the reasonable costs of reproducing the requested documents.

---

2. The commissioner has indicated that the trial court's statement that the commissioner has received all of the documents specified in the July 27, 1993, administrative subpoena may be incorrect. Neither party has supplemented the record on appeal to permit resolution of this conflict.

3. This assumption is based on contents of the notice filed with this court by the trial court.

C.R.C.P. 45 states in pertinent part as follows:

### Rule 45. Subpoena

(a) **For Attendance of Witnesses; Form; Issue.** Subpoenas may be issued under Rule 45 only to compel attendance of witnesses, with or without documentary evidence, at a deposition, hearing or trial. Every subpoena shall state the name of the court, and the title of the action, and shall command each person to whom it is directed to attend and give testimony at a time and place therein specified.

(b) **For Production of Documentary Evidence.** A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein; but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may: (1) Quash or modify the subpoena if it is unreasonable and oppressive; or (2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things.

C.R.C.P. 45, 7A C.R.S. (1984). The provisions of C.R.C.P. 45(a) authorize the issuance of subpoenas to compel the attendance of witnesses at depositions, hearings, or at trial. A subpoena issued pursuant to C.R.C.P. 45(a) need not require the person subpoenaed to bring documents to the scheduled event. The provisions of C.R.C.P. 45(b) become relevant only if the subpoena requires a witness to produce documents at a deposition, hearing, or trial.

The administrative subpoena issued by the commissioner on July 27, 1993, was not issued pursuant to C.R.C.P. 45(a), but was issued pursuant to the Act. Assuming, arguendo, that C.R.C.P. 45 directly governs the enforcement proceedings subsequently initiated by the commissioner, C.R.C.P. 45(b) is by its terms inapplicable to the question of costs raised by the bank in its motion to reconsider the enforcement order. However, we conclude that C.R.C.P. 45 is not directly applicable to this enforcement proceeding.

The commissioner's petition for an order compelling compliance with its July 27, 1993, administrative subpoena was filed pursuant to the following provisions of the Act:

(3) In case of contumacy by, or refusal to obey a subpoena issued to, any person, the district court of the city and county of Denver, upon application by the securities commissioner, may issue to the person an order requiring that person to appear before the securities commissioner, or the officer designated by the securities commissioner, to produce documentary evidence if so ordered or to give evidence touching the matter under investigation or in question. Failure to obey the order of the court may be punished by the court as a contempt of court.

§ 11-51-601(3), 4B C.R.S. (1994 Supp.).
C.R.C.P. 1(a) provides as follows:

### Rule 1. Scope of Rules

(a) **Procedure Governed.** These rules govern the procedure in the supreme court, court of appeals, district court and superior courts and in the juvenile and probate courts of the City and County of Denver, in all actions, suits and proceedings of a civil nature, whether cognizable as cases at law or in equity, and in all special statutory proceedings, with the exceptions stated in Rule 81. They shall be liberally construed to secure the just, speedy, and inexpensive determination of every action....

C.R.C.P. 1(a), 7A C.R.S. (1984).
C.R.C.P. 81(a) provides as follows:

### Rule 81. Applicability in General

(a) **Special Statutory Proceedings.** These rules do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute. Where the applicable statute provides for procedure under a former Code of Civil Procedure, such procedure shall be in accordance with these rules.

C.R.C.P. 81(a), 7A C.R.S. (1984).

The trial court held that enforcement proceedings authorized by section 11–51–601(3) of the Act are not inconsistent or in conflict with the Colorado Rules of Civil Procedure for Courts of Record in Colorado (the rules of civil procedure) and therefore are not excepted from such rules. The trial court also held that the enforcement proceeding itself is a special statutory proceeding governed by the rules of civil procedure. The commissioner argues that the trial court's conclusions are erroneous. We agree.

In *People ex rel. Orcutt v. District Court*, 164 Colo. 385, 392–93, 435 P.2d 374, 377 (1967), we held that judicial proceedings initiated by the Commissioner of Agriculture to enforce administrative subpoenas issued pursuant to a statute substantially similar to the Act are ancillary to such statutory proceedings and are not governed generally by the rules of civil procedure.[4] The trial court in *Orcutt* determined that the Commissioner of Agriculture was required to comply with the rules of civil procedure governing the filing of complaints, service of process, and the filing of answers or other responsive pleadings. On the basis of that determination, the trial court granted motions to quash subpoenas issued by the Commissioner of Agriculture because service of the subpoenas was not accomplished pursuant to the rules of civil procedure governing the service of process in civil actions. We held that the trial court erred in treating the enforcement proceeding as a civil action governed by the rules of civil procedure relating to service of process because "the legislature intended to provide a simplified procedure for the judicial enforcement of administrative subpoenas." *Id.* at 392, 435 P.2d at 377. The enforcement proceeding in this case is similarly ancillary to the provisions of the Act granting authority to the commissioner to issue administrative subpoenas. Therefore,

the proceeding is not governed in general by the rules of civil procedure.

The trial court relied on *Moody v. Larsen*, 802 P.2d 1169 (Colo.App.1990), in support of its conclusion. In *Moody* the court of appeals held that actions initiated pursuant to section 16–5–209, 8A C.R.S. (1986), are special statutory proceedings subject to the rules of civil procedure. *Moody*, 802 P.2d at 1172. In our view, *Moody* is not dispositive of the issue before us.

Section 16–5–209 contains the following pertinent provisions:

**16–5–209. Judge may require prosecution.** The judge of a court having jurisdiction of the alleged offense, upon affidavit filed with [the judge] alleging the commission of a crime and the unjustified refusal of the prosecuting attorney to prosecute any person for the crime, may require the prosecuting attorney to appear before [the judge] and explain [his or her] refusal. If after a hearing the judge finds that the refusal of the prosecuting attorney to prosecute was arbitrary or capricious and without reasonable excuse, [the judge] may order the prosecuting attorney to file an information and prosecute the case or may appoint a special prosecutor to do so....

§ 16–5–209, 8A C.R.S. (1986). As the court of appeals emphasized in *Moody*, section 16–5–209 presumes the convening of a hearing, the introduction of evidence, and other procedures established by the rules of civil procedure. *Moody*, 802 P.2d at 1170–71. Thus the procedure established by that statute depends upon and does not conflict with the rules of civil procedure.

The Act authorizing the commissioner to issue administrative subpoenas is fundamentally different in purpose, substance, and effect from section 16–5–209. The former is designed to facilitate rapid administrative action. The latter is designed to permit citizens to establish through general adversary processes that a district attorney should be

---

**4.** The statute at issue in *People ex rel. Orcutt v. District Court*, 164 Colo. 385, 435 P.2d 374 (1967), 1963 C.R.S. § 7–3–19(3), provided in pertinent part as follows:

. . . Upon failure or refusal of any witness to obey any subpoena, the Commissioner may

petition the district court, and upon proper showing, the court may enter an order compelling the witness to appear and testify or produce documentary evidence. Failure to obey the order of court shall be punishable as a contempt of court.

required to initiate a criminal proceeding. The Act is similar to the statute we considered in *Orcutt*. The provisions of the Act authorizing the issuance of administrative subpoenas and ex parte judicial enforcement thereof are inconsistent with the rules of civil procedure relating to the filing of complaints, service of process, and the filing of answers and responsive pleadings. In our view, *Orcutt*, not *Moody*, controls this case.

B

■ In *Orcutt* we observed that in conducting proceedings to enforce administrative subpoenas district courts are not precluded from quashing said subpoenas if "the subpoena calls for information that is not reasonably related to the matter under inquiry by the administrative body, or is otherwise oppressive or unreasonable in its demands." *Orcutt*, 164 Colo. at 392, 435 P.2d at 377. The bank and the commissioner agree that in view of the fact that the General Assembly has determined that proceedings to enforce administrative subpoenas should be conducted by district courts, such courts have authority to fashion appropriate rules to ensure that the enforcement order is reasonable and not otherwise oppressive. *See United States v. Friedman*, 532 F.2d 928, 937 (3d Cir.1976). We recognized the existence of this equitable authority in *Orcutt*.

Concededly, no statute or rule authorizes district courts in proceedings to enforce administrative subpoenas to order any person or entity to pay the costs of reproducing documents requested by such subpoenas. However, in the exercise of their equitable authority district courts may quash an administrative subpoena found to be unreasonable or oppressive. *Orcutt*, 164 Colo. at 392, 435 P.2d at 377. We find no basis to suggest that district courts lack authority to condition the denial of a motion to quash or modify an administrative subpoena upon payment by the administrative authority of reasonable costs associated with the production of the requested documents. In addition, while C.R.C.P. 45 is not directly applicable to proceedings initiated to enforce administrative subpoenas, we conclude that district courts may consider the policies underlying C.R.C.P. 45(b) in ruling on such motions. *Cf. Charnes v. DiGiacomo*, 612 P.2d 1117, 1122 (Colo.1980) (pursuant to C.R.C.P. 45(b), a taxpayer with an expectation of privacy in his or her bank records has standing to raise the legitimacy of governmental access to the records in a motion to quash subpoena issued to bank for the records). In this case, the district court had authority to condition its denial of the bank's motion to quash the administrative subpoena on the commissioner's payment of reasonable expenses incurred by the bank in producing the documents requested by the subpoena.

■ The commissioner contends that the provisions of article V, sections 32 and 33 of the Colorado Constitution prohibit the commissioner from paying the costs associated with reproducing documents requested by an administrative subpoena absent express legislative authority evidenced by the general appropriations bill or a separate appropriations bill. We reject this contention.

The commissioner acknowledges that the General Assembly approved a specific line item for "Operating Expenses" in the Division of Securities budget contained in the general appropriations bill for fiscal year 1994, H.B. 94–1356. The commissioner must be presumed to have authority to pay costs associated with issuing administrative subpoenas pursuant to section 11–51–601(2) from the general administrative budget of the Division of Securities. That authority necessarily extends to costs associated with enforcing such subpoenas. The commissioner may request a supplemental appropriation from the General Assembly if the initial appropriation for general operating expenses proves to be insufficient. *Goebel v. Colorado Dept. of Insts.*, 764 P.2d 785, 798 n. 13 (Colo. 1988) (citing *Colorado Gen. Assembly v. Lamm*, 738 P.2d 1156, 1169 (Colo.1987)). We have no reason to speculate that the General Assembly would be unresponsive to a request for a supplemental appropriation in such a situation. *Goebel*, 764 P.2d at 798.

Furthermore, the commissioner's fiscal argument does not establish the proposition that the trial court had no authority to impose the payment of reproduction costs as a condition of denying the bank's motion to

quash the subpoena in this case. The fact that the commissioner may not in fact satisfy that condition because of fiscal concerns would simply mean the commissioner could not obtain judicial enforcement of the administrative subpoena.

C

■ In *Charnes v. DiGiacomo*, 612 P.2d 1117, 1122 (Colo.1980), we held that seizure of records pursuant to an administrative subpoena is reasonable if the administrative investigation was conducted for a lawfully authorized purpose, if the requested documents were relevant to the investigation, and if the subpoena was sufficiently specific to obtain documents which were adequate but not excessive for the inquiry. In its initial order granting the commissioner's motion to enforce the July 27, 1993, administrative subpoena, the trial court found that the investigation conducted by the commissioner satisfied these requirements.

In its motion to quash the administrative subpoena, the bank did not contest the substance of the trial court's enforcement order. The commissioner argues that reproduction costs can be imposed on the commissioner only if the substance of the administrative subpoena is determined to be unreasonable and oppressive and asserts that because the bank did not contend that the contents of the administrative subpoena were unreasonable and oppressive, the trial court abused its discretion in imposing costs. We reject these arguments.

As a general rule, recipients of subpoenas in criminal proceedings must assume the cost of compliance with such subpoenas as a matter of civic responsibility. *See Hurtado v. United States*, 410 U.S. 578, 589, 93 S.Ct. 1157, 1164, 35 L.Ed.2d 508 (1973); *In re Grand Jury No. 76–3 (MIA) Subpoena Duces Tecum*, 555 F.2d 1306, 1308 (5th Cir. 1977). However, in *United States v. Friedman*, 532 F.2d 928, 937 (3d Cir.1976), the federal court of appeals concluded that the recipient of a summons for the production of documents issued by the Internal Revenue Service properly sought to quash the summons on the ground that the costs of compliance with its provisions rendered the summons unreasonable and oppressive. The court noted its authority to ensure fairness in all judicial proceedings and found decisions construing Rule 45(b) of the Federal Rules of Civil Procedure to be instructive in guiding the exercise of that authority. *Friedman*, 532 F.2d at 937. The court reversed the trial court's order denying the recipient's motion to quash and remanded the case to the trial court for "an individualized determination that the cost involved in complying with the summons in question exceeds that which the respondent may reasonably be expected to bear as a cost of doing business." *Id.* at 938.

We find the reasoning and result of *Friedman* to be persuasive. All citizens have a public responsibility to bear reasonable costs of compliance with governmental subpoenas to produce documents. *Hurtado*, 410 U.S. at 589, 93 S.Ct. at 1164. However, in some cases the cost of compliance with a subpoena might render the subpoena itself unreasonable and oppressive. *Friedman*, 532 F.2d at 937. A person seeking to quash an administrative subpoena on the ground that the cost of compliance therewith renders it unreasonable and oppressive has the burden of establishing the precise amount of the cost of compliance and that such amount exceeds the amount the recipient would reasonably be expected to incur as a civic responsibility. *Id.* at 938.

■ In this case, the trial court concluded that the entire cost to the bank of reproducing the documents specified in the July 27, 1993, administrative subpoena should be borne by the commissioner. In the absence of any evidence or findings with respect to the amount of expenses the bank could reasonably be expected to incur in complying with the subpoena, the trial court's order constitutes an abuse of discretion.

IV

For the forgoing reasons, we affirm the trial court's conclusion that it had authority to require the commissioner to reimburse the bank for expenses reasonably incurred by the bank in complying with the July 27, 1993, administrative subpoena. However, we reverse the trial court's conclusion that the

commissioner, as a condition of the court's order denying the bank's motion to quash subpoena, must reimburse the bank for the full cost of compliance with the administrative subpoena. The trial court's order of November 4, 1993, is therefore vacated and the case is remanded to that court for further proceedings consistent with this opinion.

ERICKSON, J., does not participate.