COLORADO STATE BOARD OF AC-
COUNTANCY, Plaintiff–Appellee
and Cross–Appellant,

v.

ARTHUR ANDERSEN LLP, a limited
liability partnership, Defendant–
Appellant and Cross–Appellee.

No. 03CA1872.

Colorado Court of Appeals,
Division V.

Feb. 10, 2005.

Rehearing Denied March 17, 2005.

Certiorari Denied July 25, 2005.

John W. Suthers, Attorney General, Rebecca A. Connors, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Bartlit Beck Herman Palenchar & Scott LLP, Joseph C. Smith, Jr., Alison G. Wheeler, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by: Judge VOGT.

In this proceeding to enforce an administrative subpoena, respondent, Arthur Andersen LLP (Andersen), appeals the trial court's order enforcing, with modifications, the subpoena served on Andersen by the Colorado State Board of Accountancy. The Board cross-appeals. We affirm.

Andersen, a national public accounting firm, was the outside auditor for Boston Chicken, Inc. (BCI), from 1992 through 1998. The BCI audits for the years 1994–1997 were conducted by Andersen's Denver office.

BCI declared bankruptcy in 1998. In February 2001, the bankruptcy trustee for BCI filed an action against Andersen and others in federal court in Arizona, alleging, among other things, that Andersen's audits were not conducted in accordance with generally accepted auditing standards.

After receiving a copy of the bankruptcy trustee's complaint, the Board commenced an investigation to determine whether Andersen or individuals employed by it had violated Colorado's Accountancy Act, § 12–2–101, et seq., C.R.S.2004.

Meanwhile, after having been convicted of obstruction of justice in connection with the bankruptcy of Enron Corporation, Andersen announced that it was ending its nationwide public accounting practice. In July 2002, Andersen advised the Board that it was voluntarily relinquishing its license to practice public accountancy in Colorado. The Board, however, declined to accept the relinquishment, explaining that it "felt it would not be wise because the Board is still dealing with complaints filed against [Andersen]."

In January 2003, the Board issued a subpoena duces tecum to Andersen. The subpoena sought documents that, according to the Board, related to the BCI complaint and to work performed by Andersen before it closed its offices in Colorado in August 2002. Andersen responded that the Board lacked jurisdiction to pursue the investigation giving rise to the subpoena because Andersen had voluntarily relinquished its Colorado license.

After the parties unsuccessfully attempted to negotiate a resolution of their dispute, the Board filed an ex parte petition in the trial court, pursuant to § 12–2–126(1)(a)(II), C.R.S.2004, for issuance of an order to enforce its subpoena. The court entered an order granting the petition. Andersen then sought relief from the order by moving to quash or modify the subpoena. After reviewing the parties' written submissions and hearing argument, the trial court expressed concerns about the wisdom and economic justification of the Board's investigation of Andersen, but concluded that the investigation was within the Board's statutory authority. It therefore entered an order that directed Andersen to comply with the subpoena but modified the subpoena by limiting certain of the Board's document requests. Andersen's motion for a stay pending appeal was granted.

### I. *Appeal*

■ Andersen contends on appeal that the Board lacked jurisdiction to issue the subpoena duces tecum because (1) having voluntarily relinquished its license, it was no longer subject to discipline by the Board, and (2) the subpoena was not for a lawfully authorized purpose. We disagree.

Resolution of Andersen's contentions requires us to construe provisions of the Accountancy Act. In construing these statutes, our primary task is to ascertain and give effect to legislative intent. To determine intent, we look first to the statutory language, giving the words and phrases their plain and ordinary meaning. If the language of the statute is plain and unambiguous, we do not reach beyond that language to determine intent. *See Colorado State Board of Accountancy v. Raisch,* 960 P.2d 102 (Colo. 1998).

■ The underlying purpose of the Accountancy Act is to protect the public by ensuring that persons who hold themselves out as certified public accountants are qualified to render professional accounting services. The Act contains provisions that seek to maintain high standards of professional conduct by licensees. It regulates both individuals who practice or wish to practice public accounting and accounting firms. *See* § 12–2–101; *Colorado State Board of Accountancy v. Paroske,* 39 P.3d 1283 (Colo. App.2001).

The Board is responsible for administering the Act. Among other matters, it has the power and duty to issue, renew, revoke, or suspend certificates. In addition, the Board has the power, on its own motion or on the complaint of any person, to investigate those accused of violating the Act. That investigatory authority includes the power to issue subpoenas duces tecum. *See Colorado State Board of Accountancy v. Raisch, supra; Cartwright v. State Board of Accountancy,* 796 P.2d 51 (Colo.App.1990). However, the Board may not act in excess of its statutory authority. *See Raisch, supra; Cartwright, supra.*

### A.

In support of its argument that the Board was without jurisdiction to discipline "a former licensee," Andersen cites provisions of the Act that, it contends, demonstrate the General Assembly's intent that the Board would have authority to discipline only current licensees. *See* § 12–2–101(1), C.R.S. 2004 (declaring it to be in interest of state to provide for regulation of "certified public ac-

countants"); § 12–2–101(2), C.R.S.2004 (Board may "invoke discipline proactively with regard to certified public accountants ... when required for the protection of the public health, safety, and welfare"); § 12–2–123(1), C.R.S.2004 (Board may "deny the issuance of, refuse to renew, revoke, or suspend any certificate of a certified public accountant ... or may fine, censure, issue a letter of admonition to, or place on probation the holder of any certificate").

We note initially that, contrary to Andersen's contention, there is language in these provisions indicating that the Board may also take action against parties who are not current licensees. *See, e.g.,* § 12–2–123(1) (Board may "deny the issuance of" a certificate).

More important, however, even assuming the Board's disciplinary authority is largely limited to current licensees, its investigative authority is not so limited.

Section 12–2–126(1)(a)(I), C.R.S.2004, states:

> The board, on its own motion based on reasonable grounds or on the signed, written complaint of any person, may investigate *any person* who *has engaged, is engaging, or threatens to engage in any act or practice that constitutes a violation of any provision of this article.* The board ... may ... issue subpoenas to compel ... the production of all relevant papers, books, records, documentary evidence, and materials in any hearing, investigation, accusation, or other matter coming before the board.

(Emphasis supplied.)

Thus, under the plain language of § 12–2–126(1)(a)(I), the Board has the power to investigate "any person" who has violated, is violating, or threatens to violate any provision of the Act. Had the General Assembly intended to limit the Board's investigatory power to investigation of any "licensee," or any "certified public accountant," it could have so stated, but it did not.

That "person" in § 12–2–126(1)(a)(I) was intended to mean something different from, not synonymous with, "licensee" is made

clear in the next subsection. Section 12–2–126(1)(a)(II) permits the Board to seek a court order requiring any "person *or* licensee" to comply with the Board's subpoena (emphasis added).

Our conclusion that the legislature's use of "any person" permits the Board to investigate complaints against persons or entities other than current licensees is consistent with the analysis in a case on which Andersen relies, *Haggerty v. Department of Business & Professional Regulation,* 716 So.2d 873 (Fla.Dist.Ct.App.1998). In holding that a Florida agency did not have authority to discipline a licensee whose license had expired prior to the filing of the administrative complaint against it, the court relied on a Florida statute that enumerated grounds for disciplinary action "against a licensee." The court distinguished that statute from other professional disciplinary statutes that prescribed penalties for prohibited acts committed by "any person." Use of the latter phrase, the court noted, "permits the discipline of a former licensee for conduct committed while the license was active." *Haggerty, supra,* 716 So.2d at 874.

We also note that the construction urged by Andersen would allow a licensee to thwart an investigation by simply relinquishing its license—which, in turn, could adversely affect the Board's ability to fulfill its obligation to protect the public. *See Paroske, supra; see also Cross v. Colorado State Board of Dental Examiners,* 37 Colo.App. 504, 552 P.2d 38 (1976)(to effectuate purpose of Dental Practice Law, dentist would not be permitted to surrender his license as of right during pendency of disciplinary proceedings and thereby divest Board of Dental Examiners of jurisdiction).

The *Cross* division reasoned that the dentist could reapply for licensure, and that the dental board therefore needed to be able, in the event of such reapplication, to review the reasons and circumstances under which the license originally had been surrendered. Notwithstanding Andersen's contention that it is now "legally ineligible" for relicensure, we perceive no basis for reading the Accountancy Act as precluding the Board from undertaking a similar inquiry when a license is surrendered.

We thus conclude that the Board's authority to issue its subpoena duces tecum did not depend on whether Andersen was a *current* licensee when the subpoena issued. In light of that conclusion, we need not address Andersen's arguments regarding the Board's asserted obligation to accept the surrender of its license.

**B.**

■ Nor do we agree with Andersen's related contention that the subpoena was improper because the Board was not conducting its investigation for a lawfully authorized purpose.

■ Seizure of documents pursuant to an administrative subpoena is reasonable if the administrative investigation was conducted for a lawfully authorized purpose, the requested documents were relevant to the investigation, and the subpoena was sufficiently specific to obtain documents that were adequate but not excessive for the inquiry. *Feigin v. Colorado National Bank,* 897 P.2d 814 (Colo.1995).

■ If a challenge is made to an administrative subpoena, the burden is on the issuing agency to demonstrate the propriety of its issuance. If the agency fails to demonstrate that the subpoena issued is for an authorized purpose, the court must refuse to enforce it. *Board of Medical Examiners v. Duhon,* 867 P.2d 20 (Colo.App.1993) (*Duhon I* ), *aff'd,* 895 P.2d 143 (Colo.1995).

The BCI bankruptcy trustee's complaint had alleged, among other things, that Andersen "actively participated and substantially assisted in the misrepresentation of BCI's financial condition and financial activities," and that Andersen violated generally accepted accounting standards in performing audits of BCI's financial statements. The Board alleged in its petition that, based on the BCI complaint, it had instituted an investigation to determine whether Andersen or individual certified public accountants employed by Andersen had violated the Accountancy Act or the Board's regulations. At oral argument before the trial court, the Board's counsel

reiterated that the Board was investigating not only Andersen itself but also individuals who were employed by Andersen in connection with the BCI matter and continued to be licensed in Colorado.

The Board's investigation was for a lawfully authorized purpose. As noted, § 12–2–126(1)(a)(I) authorizes the Board, "on its own motion based on reasonable grounds or on the signed, written complaint of any person," to investigate present, past, or threatened violations of any provision of the Act. The acts and omissions alleged in the bankruptcy trustee's complaint, if true, would constitute violations of the Act. *See, e.g.,* § 12–2–123(1)(b), C.R.S.2004 (fraud or negligence in the practice of public accounting); § 12–2–123(1)(n), C.R.S.2004 (act or omission which fails to meet generally accepted accounting principles or generally accepted auditing standards in the profession).

Even if Andersen were no longer a licensee, the Board could still investigate the circumstances giving rise to the complaint against it and the surrender of its license. *See Cross v. Colorado State Board of Dental Examiners, supra.* The Board could also discipline individual accountants involved in Andersen's BCI audits who were currently licensed in Colorado.

Andersen argues that disciplining individual licensees was not the Board's "true purpose"; that the Board had not received complaints against individuals, opened any investigations of individuals, or asked any individual to respond to any complaint; and that the trial court did not rely on that alleged purpose in ordering enforcement of the subpoena. However, on the record before us, we cannot conclude that the Board's "true purpose" was other than that stated in its petition and at the hearing before the trial court. Further, the Board is empowered to investigate "on its own motion," *see* § 12–2–126(1)(a)(I), and must necessarily investigate before presenting a formal charge of misconduct. *See McGee v. State Board of Accountancy,* 169 Colo. 87, 453 P.2d 800 (1969). Finally, the fact that the trial court did not rely on this stated purpose does not preclude a reviewing court from doing so. *See Steamboat Springs Rental & Leasing,*

*Inc. v. City & County of Denver,* 15 P.3d 785 (Colo.App.2000)(court of appeals may affirm on grounds different from those relied on by trial court).

In sum, we conclude that the trial court did not err in ruling that issuance of the subpoena duces tecum was within the Board's statutory authority.

## II. *Cross–Appeal*

On cross-appeal, the Board argues that the trial court erred when it limited the scope of the subpoena duces tecum by excluding certain documents. We do not agree.

### A.

■ We first address whether we have jurisdiction to consider the Board's cross-appeal.

Upon determining that the cross-appeal appeared to challenge an order partially quashing a subpoena, a motions division of this court directed the parties to brief the issue of whether we have jurisdiction to decide the cross-appeal. Having reviewed the authorities and the parties' contentions, we conclude that we do.

Except in circumstances not present here, an appeal to this court may be taken only from a final judgment. *See* C.A.R. 1(a). Accordingly, orders quashing subpoenas have been held to be not appealable because they are simply interlocutory and do not finally resolve the issues in the case. *See People ex rel. Orcutt v. District Court,* 164 Colo. 385, 435 P.2d 374 (1967) (order quashing subpoena was proper subject for original proceeding because, as interlocutory order, it was not a final judgment reviewable by writ of error); *see also Hoen v. District Court,* 159 Colo. 451, 412 P.2d 428 (1966)(order quashing service of process was not tantamount to a judgment of dismissal and thus was reviewable only by original proceeding in supreme court).

The order on appeal here, which partially enforced and partially quashed the Board's subpoena, was entered to conclude a special statutory proceeding brought by the Board pursuant to § 12–2–126(1)(a)(II). In *Board*

*of Medical Examiners v. Duhon,* 844 P.2d 1312 (Colo.App.1992) (*Duhon II*), a division of this court held that an order enforcing a subpoena in an analogous statutory proceeding was a final judgment within the meaning of C.A.R. 1(a)(1), and it therefore denied the motion of the Board of Medical Examiners to dismiss the appeal for lack of jurisdiction. In so concluding, the *Duhon II* division noted in dictum that the order before it was unlike the orders to quash that were at issue in *Orcutt* and *Hoen, supra,* because those orders to quash did not finally dispose of the proceedings.

Here, as in *Duhon II,* the order under review disposed of all matters pending before the trial court in the statutory proceeding filed by the Board, and was thus appealable as a final judgment pursuant to C.A.R. 1. Upon Andersen's appeal of that order, the Board was entitled under C.A.R. 4(a) to raise its own contentions of error regarding the same order by timely filing its notice of cross-appeal. Notwithstanding language in *Orcutt, Hoen,* and *Duhon II* regarding the nonappealability of orders to quash in other circumstances, we do not read those cases as precluding us from addressing a cross-appeal challenging portions of a final judgment that is otherwise properly before us.

### B.

■ Having concluded that we have jurisdiction to consider the merits of the Board's cross-appeal, we further conclude that the trial court did not err in limiting the scope of the subpoena.

■ In proceedings to enforce administrative subpoenas, a district court has the equitable authority to fashion appropriate rules to ensure that the enforcement order is reasonable and not otherwise oppressive. The court may quash a subpoena that calls for information that is not reasonably related to the matter under inquiry by the administrative body or that is otherwise oppressive or unreasonable in its demands. *Feigin v. Colorado National Bank, supra.*

As noted above, if a challenge is made to a subpoena, the burden is upon the issuing agency to demonstrate the propriety of its issuance. *Duhon I, supra.*

The Board's subpoena sought sixty-one categories of documents, including, as relevant here, Andersen's audit manuals in effect from 1992 to 2002 and any peer review reports for the same years. Andersen asked that, if the court did not quash the subpoena, it modify the subpoena to delete requests that would have divulged Andersen's confidential and commercially sensitive information or would have been "inordinately costly."

After hearing the Board's explanation of its reasons for its request, the trial court modified the subpoena as follows: (1) Andersen had to produce audit manuals only for 1992 through 1998, and the manuals in the Board's possession were to be closed to public inspection; (2) Andersen had to produce only those documents produced in the bankruptcy trustee's Arizona lawsuit; (3) Andersen had to produce only peer reviews that examined work done for BCI; and (4) Andersen was not required to produce documents relating to its insurance coverage.

We conclude the court's modifications were well within its equitable authority.

The Board's investigation was directed at Andersen's work in Colorado for BCI. That work ended in 1998; thus, the court could properly conclude that audit manuals after that date, as well as peer reviews of work done for other Andersen clients, were not relevant to the investigation.

Andersen represented to the trial court that nearly all the remaining documents responsive to the subpoena requests had already been produced in the Arizona litigation, which, according to Andersen, resulted in the production of more than one million pages of documents. When the trial court inquired of the Board's counsel "what beyond the Arizona documents are desired and why," the Board's counsel did not identify any documents other than the audit manuals and the peer reviews. Further, although the trial court then limited the subpoena as set forth above, it agreed with counsel that the Board could "always come back and ask for more" if, upon reviewing the Arizona documents, it

concluded that they did not include all the Board's requests.

Finally, the insurance documents referenced by the court had not even been requested in the subpoena.

The Board argues that Andersen was not entitled to have the subpoena quashed based on cost because it did not establish the "precise amount of the cost of compliance and that such amount exceeds the amount the recipient [of the subpoena] would reasonably be expected to incur as a civic responsibility." *See Feigin v. Colorado National Bank, supra,* 897 P.2d at 821. However, although Andersen cited cost as one concern and noted that it might be required to expend nearly $8,000 per month to grant the Board's request for unlimited access to its database, the trial court did not modify the subpoena based solely on excessive cost. Instead, it ordered that the parties could return to court to raise the issue if document production became too costly for Andersen.

The judgment is affirmed.

Chief Judge DAVIDSON and Judge NIETO concur.